**Lorenzo Aguilar RAMOS, et al., Plaintiffs-Appellants,**

v.

**Alexander M. HAIG, Jr., et al., Defendants-Appellees.**

No. 82–2953.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1983.

Decided Sept. 2, 1983.

Ross Harry Briggs, Nat. Juvenile Law Center, Inc., St. Louis, Mo., for plaintiffs-appellants.

---

* The Honorable Anthony J. Celebrezze, Senior Circuit Judge, U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

1. The petitioners do not contest the lawfulness of their initial detention: An examining immi-

Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for defendants-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.*

CELEBREZZE, Senior Circuit Judge.

The Petitioners, Lorenzo Ramos and Eduardo Rodriguez, are Cuban nationals who arrived in the United States from Cuba in the spring of 1980. Upon their arrival at Key West, Florida, Ramos was 14 and Rodriguez was 15 years of age. Immigration and Naturalization Service (INS) initially classified petitioners as "excludable aliens".[1] Consequently, the government detained petitioners and began deportation investigations. During the pendency of the deportation investigations, petitioners were placed in a number of detention centers throughout the United States. On January 16, 1981, INS informed petitioners that their detention would continue while exclusion hearings were pending. The exclusion hearings began on March 25, 1981. During the exclusion hearings, but before the administrative law judge rendered his decision, petitioners filed petitions for writs of habeas corpus. Ramos' petition for relief became moot when he was placed in an appropriate treatment program in Tucson, Arizona. On September 4, 1981, the district court granted Rodriguez's petition for habeas corpus. Essentially, the district court held that the government's detention of Rodriguez in excess of 15 months without a hearing amounted to a violation of his procedural due process rights. Counsel for petitioners moved for an award of attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. Sec. 2412 (1979). The district court denied petitioner's motion for attorneys' fees because it determined that the government's position was "substantially justified." The petitioners appeal from the

gration officer, acting pursuant to 8 U.S.C. Sec. 1225, detained petitioners because they lacked visas, 8 U.S.C. Sec. 1182(a)(2), and because they had allegedly been convicted of serious crimes in Cuba, 8 U.S.C. Sec. 1182(a)(9).

district court's decision denying attorneys' fees. We affirm.

Under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A), a prevailing party is entitled to attorneys' fees and expenses "incurred by that party in any civil action (other than cases sounding in tort) brought ... against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." [2] The parties do not contest either the applicability of Sec. 2412(d)(1)(A) to this case or the fact that the petitioners are prevailing parties for the purposes of Sec. 2412(d)(1)(A). [3] Thus, the sole question before this court is whether the government's long-term confinement of petitioners is "substantially justified."

▉▉▉▉ Generally, governmental action is substantially justified when the government demonstrates that its action had a "reasonable basis in law and fact." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984, 4489–90. *E.g., Foster v. Tourtellotte,* 704 F.2d 1109, 1112 (9th Cir.1983)

**2.** The Court of Appeals for the Third Circuit has recently addressed the important question whether "position" refers to the position assumed by the government for purposes of litigation or whether it refers to the position assumed by the government when it acted initially. *Natural Resources Defense Counsel v. U.S. E.P.A.,* 703 F.2d 700 (3rd Cir.1983). We recognize that this fine distinction may be crucial. In this instance, however, the government's litigation position is simply that it acted correctly. Thus, we are not presented with the difficult question whether the government is insulated from an award of attorneys' fees when its action is unreasonable though its legal position tenable.

**3.** When attorneys' fees are sought pursuant to Sec. 2412(d)(1)(A), the party seeking the award bears the initial burden of proving that he is a qualified prevailing party, that his action is a civil action not sounding in tort, and that the United States is a party to the action. *See, e.g., Citizens Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422 (N.D.Ohio 1982). Once the moving party meets this threshold burden, the trial court must award attorneys' fees unless the government proves that its actions are substantially justified. *Fos-*

("... reasonableness is the correct test for determining whether the government's position was substantially justified"); *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 431 (5th Cir.1982) (In order to meet its burden of proof, the government must make a "'strong showing' that its position has a reasonable basis in law"); *Natural Resources Defense Counsel v. U.S. E.P.A.,* 703 F.2d 700, 707 (3rd Cir.1983) (opinion announcing the judgment of the court) (Government must prove the reasonableness of the agency's actions). This conclusion is supported by the legislative history of the Act which indicates that:

> The test of whether or not a government action is substantially justified is essentially one of *reasonableness.* Where the government can show that its case had a reasonable basis both in law and in fact, no award will be made .... H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984, 4489–90. (emphasis added).

Moreover, by interpreting substantially justified to mean reasonable, we further the two primary policies of the Act. [4] Thus, we hold that the government is not liable for

*ter v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983); *Natural Resources Defense Counsel, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 704 (3rd Cir.1982) (opinion announcing judgment of the court).

**4.** Section 2412(d)(1)(A) represents a balance between two competing policies. The section encourages citizens to challenge governmental action by providing for attorneys' fees if the citizen prevails. *See Foster v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983) (Congress sought to encourage citizens to challenge unreasonable governmental action by lessening the traditional common law requirement that prevailing parties prove bad faith). The statute also protects the government from attorneys' fees when the government advances "a novel but credible extension or interpretation of the law ....", 1980 U.S.Code Cong. & Ad.News, *supra* at 4990. Thus, the "substantially justified" standard enumerated in Sec. 2412(d)(1)(A) has been appropriately characterized as a "middle ground." *E.g., Natural Resources Defense Council v. U.S.E.P.A.,* 703 F.2d 700, 711 (3rd Cir.1983) (opinion announcing the judgment of the court); *Berman v. Schweiker,* 531 F.Supp. 1149, 1154 (N.D.Ill. 1982).

attorneys' fees pursuant to Sec. 2412(d)(1)(A) when it demonstrates that its action had a reasonable basis in law. Further, we hold that the question whether the governmental action is reasonable is a question of fact which must be upheld unless the district court's findings in this regard are clearly erroneous.[5] F.R.Civ.P. 52(a). *See Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1391 (Fed.Cir. 1982) (whether position is substantially justified depends upon "all the pertinent facts.")

The parties agree that the government detained petitioners for more than 15 months in a variety of detention centers throughout the United States[6] without the benefit of exclusion hearings. Thus, the question is whether such governmental action had a reasonable basis in law.

Pursuant to 8 U.S.C. Sec. 1225(b), an examining immigration officer must detain, for further inquiry, all aliens "who may not appear to the examining officer to be clearly and beyond a doubt entitled to land." Generally, examining immigration officers detain aliens whom they believe to be "excludable", as defined by 8 U.S.C. Sec. 1182. These aliens are processed and assigned to various detention centers while INS conducts an investigation. Thereafter, a special inquiry officer conducts a hearing and decides whether aliens "shall be allowed to enter or shall be excluded and deported." 8 U.S.C. Sec. 1226.

■ Thousands of aliens arrived in our country as part of the "Cuban flotilla";

approximately 2,000 of these aliens had backgrounds which warranted detention pending further inquiries. Consequently, INS assumed the responsibility of processing, detaining, and investigating a large number of aliens. These responsibilities were necessarily time consuming. Information concerning an alien's past criminal background in a foreign land is often difficult to obtain. Still, INS was able to parole a majority of these detainees within one year. Thus, we must accept the district court's findings that INS's general confinement of aliens for further inquiry was reasonable. With regard to INS's long-term detention of petitioners, we note that the circumstances which justify such detention are uncertain. The Immigration and Naturalization Act does not expressly limit the time in which INS must complete its investigations; thus, INS's legal position that it may indefinitely detain aliens awaiting exclusion hearings is not foreclosed by the Act. Further, INS cites two cases which arguably support its legal position.[7] *See Shaughnessy v. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Palma v. Verdeyen,* 676 F.2d 100 (4th Cir.1982). Although we express no opinion regarding the correctness of the government's legal interpretations, we cannot label its interpretations of existing precedent unreasonable. For the foregoing reasons, we believe that the district court's finding that the government's action had a reasonable basis in law is not clearly erroneous.

5. Before a court can consider whether the government's action had a reasonable basis in law, a court must make factual findings concerning the nature and extent of the government action in dispute; the reasonableness of a legal argument is directly related to the tenor of the underlying facts. After the court has made findings concerning the nature and extent of the government action, it must consider the state of the law at the time of the allegedly unreasonable action. This inquiry turns on an ordinary and reasonable perception of the law, rather than an interpretation of law which may be subsequently adopted by the courts.

6. Initially, INS sent petitioners to a processing camp in Fort McCoy, Wisconsin. Thereafter,

petitioners were sent to a halfway house for juveniles in Denver, Colorado. Because the halfway house closed down, INS was forced to transfer petitioners to a Colorado county jail for approximately nine days. From Denver, petitioners were transferred to another county jail in Casper, Wyoming. Finally, petitioners were transferred to the St. Clair County Juvenile Detention Center in Belleville, Illinois.

7. *Palma v. Verdeyen,* 676 F.2d 100 (4th Cir. 1982) was decided after the challenged governmental action in this case. Although a district court need not base its decision on subsequent case law, such authority may be considered as evidence of the reasonableness of the government's legal argument.