**Florinor McKENZIE, Plaintiff,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 C 4878.**

United States District Court, N.D. Illinois, E.D.

May 22, 1984.

Report and Recommendations May 1, 1984.

On Application For Attorney Fees Aug. 10, 1984.

**1154**

Thomas Grippand, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., James J. Kubik, Asst. U.S. Atty., Donna M. Weinstein, HEW Regional Attorney, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

SHADUR, District Judge.

On May 1, 1984 Magistrate Olga Jurco issued her thoughtful report and recommendations (the "Report," copy at-

tached) in this Social Security disability action. During the intervening three-week period:

1. Both plaintiff Florinor McKenzie ("McKenzie") and defendant Margaret Heckler (the "Secretary") have permitted the ten days provided under 28 U.S.C. § 636(b)(1)(B) and (C) to elapse, without either having filed any written objections to Magistrate Jurco's proposed findings and recommendations. Government counsel has apprised this Court's law clerk no objections in fact exist to the Report.[1]

2. This Court has reviewed both the administrative record and the Report.

Magistrate Jurco has dealt with all the issues in a careful way. In part the Report rests on a treatment of the "severity" component of disability wholly consistent with this Court's recent opinion in *McCullough v. Heckler,* 583 F.Supp. 934 (1984). This Court therefore adopts the Report as its own (while making it clear no opinion whatever is expressed on the constitutional issue posed but not resolved at Report 13–15).[2]

Accordingly this Court determines there is no genuine issue of material fact, and McKenzie is entitled to a judgment as a matter of law. This Court reverses the Secretary's decision and remands this matter to the Secretary for the sole purpose of determining the onset of McKenzie's date of disability. It is ordered that the Secretary make that determination within 63 days from the date of this decision.

## REPORT AND RECOMMENDATIONS OF MAGISTRATE OLGA JURCO

On September 21, 1981 claimant Florinor McKenzie filed applications for supplemental security income (SSI) and disabled widows benefits under 42 U.S.C. §§ 1381a and 402(e), alleging disability as of 1975 from

---

1. Of course McKenzie, the recommended winner under the Report, would have no occasion to complain.

2. This "no comment" position on the constitutionality question extends to Magistrate Jurco's

preliminary discussion of that issue as well. No inference of either agreement or disagreement with that discussion should be drawn from this caveat.

diabetes, high blood pressure and arthritis (R. 64–73, 77–82). The Secretary denied both applications initially and on reconsideration after a review by a physician and disability examiner in the State agency (R. 83–84, 86–90). A hearing was held before an administrative law judge (ALJ) before whom claimant, represented by counsel, testified (R. 24–63). On April 4, 1983 the ALJ found claimant had physical impairments of hypertension, diabetes, and minimal arthritis of the cervical spine. He found further that:

"3. None of these impairments meets or equals Appendix 1 to 20 C.F.R. Part 404, Subpart P (1981).

"4. The evidence contradicts claimant's testimony that she is severely limited in her ability to sit, stand, walk, and lift, and this testimony is not credible.

"5. Because the claimant has no impairment that meets or equals the Listing of Impairments in Appendix 1, 20 C.F.R. Section 404.1578 (1981) directs a finding that she is not disabled for the purposes of widow's benefits.

"6. Because the claimant has no severe impairment, 20 C.F.R. Section 416.-920(c) (1981) directs a finding that she is not disabled for the purposes of supplemental security income benefits. (R. 5).

This decision became the final decision of the Secretary when the Appeals Council denied claimant's request for review on June 20, 1983 (R. 2–3).

Claimant abandoned her claim for widow's benefits and seeks judicial review of the Secretary's finding that she was not disabled because she has no severe impairment. Claimant also challenges the validity of the applicable regulations 416.920, 416.921 and 416.922 as violative of the Social Security Act and the equal protection component of the Due Process Clause of the Fifth amendment because they foreclose consideration of vocational factors in determining whether an impairment is se-

vere and foreclose combination of non-severe impairments.

Before proceeding to consider the validity of these regulations, it is appropriate to initially review the administrative record and Secretary's findings and determination that the claimant's impairments were "non-severe."

In this context, an overview of applicable regulations implementing the Act will be helpful. To qualify for SSI benefits on the basis of disability, an individual must be disabled as defined in 42 U.S.C. § 1382c.

"(3)(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

"(B) ... an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

"(C) ... a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

In 1978, Regulations implementing the definition were promulgated and as amended appear in 20 C.F.R. pts. 404 & 416, subpts. P & I. Disability regulations with regard to Title II benefits and Title VI SSI are virtually identical. Part 404 of the Regulations apply to the SSI claim herein.

Regulation 416.920, 20 C.F.R. delineates five sequential tests for disability determi-

nation: (1) if a claimant is gainfully employed, he cannot be considered disabled; (2) if not gainfully employed, a claimant must have "severe" physical or mental impairments, if not, the claimant is not disabled; (3) if impairments are severe and medical evidence shows they meet the standards of a listed impairment in Appendix 1, 20 C.F.R. pt. 404, subpt. P, app. 1, a finding of disability will be made on the medical evidence alone; (4) if the impairments are severe, but are not equivalent to a listed impairment, then the claimant's residual functional capacity is determined; (5) if he can perform his past work, he is not disabled; if he cannot perform his past work, but can perform other work, taking into consideration the residual functional capacity, age, experience and education, he is not disabled.

■ Regulation § 416.921, 20 C.F.R., defines a non-severe impairment as an impairment which "does not significantly limit ... physical or mental abilities to do basic work activities." In addition, because a non-severe impairment does not significantly limit basic work related function, Regulation 416.22, 20 C.F.R. states "neither will a combination of two or more non-severe impairments significantly restrict the basic work-related functions needed to do most jobs." Therefore non-severe impairments cannot be combined to establish a severe impairment.

Basic work activities referred to are explained in Regulation 416.920 as the abilities and aptitudes necessary to do most jobs. Examples of these include—

"(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

"(2) Capacities for seeing, hearing, and speaking;

"(3) Understanding, carrying out, and remembering simple instructions;

"(4) Use of judgment;

"(5) Responding appropriately to supervision, co-workers and usual work situations; and

"(6) Dealing with changes in a routine work setting."

The first three steps of the sequential evaluation in Reg. 416.920 were "intended as a consolidation and elaboration of long-standing medical-vocational evaluation policies" which were "not to increase nor decrease the allowance/denial ratio," but were to improve efficiency by limiting the number of cases in which it would be necessary to apply the fourth and fifth vocational evaluations sequence. *Hundrieser v. Heckler*, 582 F.Supp. 1231, 1238 (N.D.Ill. 1984). Explanation of the instances where medical considerations alone would lead to a conclusion of disabled or not disabled is provided in 43 Fed.Reg. at 9296:

"There are, of course, various levels of impairment severity. On the basis of the statutory provisions, existing regulations provide that medical considerations alone can justify a finding of disabled (absent rebutting evidence) where the requisite duration requirement is met and the impairment is listed in the appendix to the regulations or is medically the equivalent of the listed impairment. This, in effect, represents the upper range of impairment severity. Conversely, *there is a point in the range of impairment severity below which the effects of the impairment have such a minimal effect on the individual that they would not be expected to interfere with his or her ability to work irrespective of his or her age, education and work experience*." (Emphasis added)

■ A severe impairment is described as one which "significantly" limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a). The regulations do not define "significant." Courts have applied the ordinary usage of the word as "having a meaning," "deserving to be considered" and "having or likely to have an influence or effect;" or conversely, the opposite as "meaningless." *Hundrieser*, at 1241. *Trafton v. Heckler*, 575 F.Supp. 742 (D.Me.1983); *Jones v. Schweiker*, 551 F.Supp. 205, 208 (D.Md. 1982). Existence of a severe impairment,

measured by reference to the claimant's ability to do basic work activities, requires that a claimant's impairments be more than "slight." A slight impairment is presumptively non-disabling regardless of age, education and vocational background. As Judge Moran stated in *Hundrieser, supra:*

> "Properly applied, 20 C.F.R. § 404.-1520(c) is a threshold test invoked at the option of the Secretary ... [and one] which the Secretary and not the claimant must meet." *Hundrieser,* at 1242.

The claimant can rebut the Secretary's case by showing that his impairments prevent him from doing his past work. *Id.* Because claimant in the instant case has no work history, analysis hinges on whether the Secretary has shown through substantial evidence in the record that claimant's impairments are so slight as to fall within the category of those presumptively non-disabling.

The Secretary has the responsibility for determining whether medical findings support a disability decision. Findings must be made on subjective symptoms, observable anatomical, physiological or psychological signs and laboratory findings. 20 C.F.R. §§ 416.927, 416.928. Subjective symptoms, such as pain, are "evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms." 20 C.F.R. § 416.-929.

Judicial review of the Secretary's decision is limited to whether the findings are supported by substantial evidence in the record as a whole and whether the Secretary applied proper legal standards. *Whitney v. Schweiker,* 695 F.2d 784 (7th Cir.1982). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; *Brand v. Secretary, H.E.W.,* 623 F.2d 523, 527 (8th Cir.1980); *Willard v. Schweiker,* No. 82 C 0755 (N.D.Ill. July 28, 1983).

The record shows that claimant, born on July 20, 1927 was 55 years old at the time of the hearing (R. 32). She attended but did not complete the second grade in school (R. 35). She has never been employed (R. 35). She testified that she became unable to work in 1975 after she suffered a heart attack and was hospitalized for two weeks (R. 35). Medical records to substantiate that hospitalization were not presented by claimant or made part of the record. She was also hospitalized in 1980 and 1981 for diabetes and high blood pressure (R. 38). Claimant estimated that she can walk about three blocks but must stop and rest after one block (R. 43). She testified that she could sit for forty-five minutes, stand for one hour and lift five pounds (R. 43–44). She complained of dizziness, pain and weakness in her right arm, neck and back, depression and hallucinations (R. 50–55). Her everyday activities included preparing meals and housecleaning. She attends church and occasionally visits friends if someone accompanies her (R. 44–47). She sleeps a great deal during the day because her medication makes her sleepy (R. 45). She has difficulty going up and down stairs and does not take public transportation unaccompanied because she cannot read or follow directions (R. 44, 48).

Records from Cook County Hospital where claimant was treated from April 1–25, 1980 for diabetes, upper respiratory infection and hypertension disclose symptoms on admission of dizziness and blurry vision (R. 158–175). Progress notes indicated that the diabetes, uncontrolled on admission, was brought under control with insulin and diet (R. 159, 165). Her upper respiratory infection improved with symptomatic treatment (R. 159, 165). Heart size and electrocardiogram were noted as normal (R. 165). On May 30, 1981 she was admitted to Presbyterian-St. Luke's Hospital with hyperglycemia and right arm pain (R. 117). Examination of the neck revealed "great trapezius pressure" which caused

pain down the right arm. Back examination showed bruises on the right posterior shoulder (R. 117). She was given analgesics and placed in a soft cervical collar which effected "some remission of pain" (R. 118). A neurosurgical evaluation revealed C5, C6 radiculopathy (disease of the spinal nerve roots) on the right. Cervical spine films showed minimal generalized degenerative changes compatible with the claimant's age (R. 118). The final clinical impression of an echocardiogram (ultrasound cardiogram), to rule out mitral valve prolapse, was "that of normal LV [left ventricle] diastolic compliance" (R. 118). Claimant's hyperglycemia was treated with increase in Insulin (R. 119). Motrin was administered to relieve her shoulder discomfort (R. 119). A psychiatry consultation was recommended because of claimant's labile personality and depression; diagnosis was "situational depression" for which Mellaril was prescribed (R. 119). Claimant was discharged after fourteen days. Final diagnosis was "Adult onset diabetes. Cervical radiculopathy. Latent syphilis." (R. 117).

Dr. Michael Bice, claimant's physician, submitted several reports. The first was an "Arthritic report" dated October 13, 1981. Dr. Bice indicated that claimant had "minimal degenerative osteoarthritic changes [in her neck] compatible with patient's age" since June 1981, that although there was no atrophy or inflammation and no surgery recommended, claimant had stiffness and recurrent pain despite treatment (R. 115–115A). He noted that she needed to wear a cervical collar occasionally (R. 115A). A cardiac report, also made October 31, 1981, showed claimant had no heart disease and had not suffered a myocardial infarction and electrocardiogram results were listed as normal (R. 153, 154). In a diabetic report of the same date, Dr. Bice indicated that claimant's compliance with Insulin therapy was good, her blood sugar normal, and no vascular or neuropathic complications were noted. He reported she had visual complications but that glasses corrected her vision to 20/20 in both eyes (R. 155). In a "spinal disor-

ders" report dated April 8, 1982 Dr. Bice noted that claimant experienced pain in her right upper limb and sensory loss of "numbness of radial nerve distribution," there was no atrophy, reflexes and gait were normal, and ambulation was unassisted (R. 150). Range of motion of cervical and lumbosacral spine were normal as were lateral flexion and rotation (R. 151). Radiologic finding revealed arthritis of the cervical spine (R. 150). In a diabetic report also dated April 8, 1982, Dr. Bice reported that claimant suffered from diabetes mellitus since 1950 which was being treated with Insulin (R. 152). Compliance with therapy was listed as "good" and no abnormalities were noted (R. 152).

The most recent report submitted by Dr. Bice, after the administrative hearing, dated February 22, 1983, was a physical capacities evaluation (R. 156). Dr. Bice estimated that claimant could not stand longer than one hour. When walking, he stated that she falls occasionally when her left ankle "gives way" and has occasional black-out spells which are an effect of diabetes (R. 156). While indicating that she could sit one to four hours, Dr. Bice added that claimant experienced "pain on sitting for prolonged period of time" (R. 156). The doctor estimated that claimant could lift no more than ten pounds because she has pain in her right upper arm caused by osteoarthritis in her spine which pinches a nerve (R. 156). He reported that claimant could use both hands for fine manipulation, grasping and pushing, but her capability for pulling, twisting and reaching above shoulder level was limited. He commented, "This lady is generally frail and her diabetes mellitus has resulted in multiple problems especially neuritis which causes weakness and pain in multiple areas of her body" (R. 157).

■ In the instant case, the ALJ failed to accord any weight or make any explanation for rejection of claimant's subjective symptoms of pain, weakness, dizziness or blackouts. These symptoms were corroborated by her physician's observations and reports. Claimant testified that she slept a

significant portion of the day because her medication made her sleepy. While the effects of medication standing alone would not support a disability finding, the ALJ's failure to consider such testimony, in conjunction with the other evidence, is also error. *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir.1980). The ALJ rejected subjective symptoms in a conclusory manner as merely "not credible" giving no explanation or making any finding for such rejection. *Szulyk v. Heckler*, 575 F.Supp. 1266, 1269 (N.D.Ill.1984); *Holndoner v. Schweiker*, 542 F.Supp. 739 (N.D.Ill.1982). When the ALJ fails to mention rejected evidence, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored. *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984).

The ALJ placed controlling weight on reports of Dr. Bice from October 1981 and April 1982 wherein the physician indicated no limitation in range of motion of the spine. He rejected the later report dated February 22, 1983 as not supported by and inconsistent with the objective evidence. Although the ALJ repeatedly states that Dr. Bice consistently found no limitation of motion, Dr. Bice scrawled a notation on the October 13, 1981 form report which could either read "some ..." or "severe ..." "stiffness in neck" (R. 115A). In another report dated April 8, 1982, Dr. Bice indicated that range of motion of the spine was normal (R. 150–152). The record is clear that claimant's arthritis manifested itself in limitations other than range of motion. Hospital reports of June 1981 documented "great trapezius pressure, [which] caused pain down the right arm" (R. 117). A neurological evaluation verified that claimant had radiculopathy on the right although X-ray reports showed minimal degenerative changes. In his report dated February 22, 1983 in amplification of his earlier reports, Dr. Bice evaluated the effects of claimant's impairments on her ability to perform work activities. Under the category "Lifting" Dr. Bice checked "occasionally" and "1 to 10 lbs." writing the comment, "Experiences pain in right upper limb due to osteoarthritis of spine pinching

nerve to this limb ..." (R. 156). Clearly this comment is consistent with his earlier clinical reports. Dr. Bice, in his 1983 report, merely translated his clinical diagnosis already in this record into practical work-capability terms. He also indicated that diabetes had caused other problems which interfered with her capacity to walk, stand, kneel and perform certain functions with her hands. A treating physician's opinion is entitled to controlling weight unless there is evidence to indicate the physician's evidence is not credible. *Whitney*, 695 F.2d at 789. Had this 1983 report been given any weight by the ALJ it would have negated the notion that claimant could perform the basic work activities listed in regulation 416.920. It was error for the ALJ to isolate evidence by considering it within one narrow time frame and picking and choosing only that evidence favorable to the Secretary. *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981); *Willard v. Schweiker*, 82 C 0755 (N.D.Ill. July 23, 1983). Additionally, the Court of Appeals for the Seventh Circuit has criticized the Secretary for substituting its own judgment for medical opinion where the effects of arthritis are in question:

> "We also take issue with the ALJ's use of the adverb 'merely' to describe degenerative arthritis. Such a word is highly inappropriate in light of overwhelming medical and scientific data readily available concerning the debilitating effects of arthritis. Moreover, this Court has held that arthritis alone may entitle a claimant to disability benefits."

*Whitney*, 695 F.2d at 788, n. 1.

The ALJ's finding of no severe impairment is not supported by substantial evidence in the record. The ALJ ignored subjective symptoms, neurological evidence, and the effects of claimant's medication. In considering the physician's reports, the ALJ rejected evidence in the 1983 report which was favorable to claimant as not based on objective findings, when in fact, clinical findings compatible with that report existed in the record.

For the foregoing reasons it is recommended that the court reverse the finding of the Secretary that claimant's impairments were not severe. Remand would normally be appropriate in a case such as this where the Secretary ended the sequential evaluation at the second step of inquiry. However, in this instance, remand is inappropriate for this purpose because had the evaluation by the ALJ continued, application of the medical-vocational guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2 (1982) would have directed a conclusion of disability based on "grid" Rules 201.01, 202.01 or 203.10, a decision in which the ALJ has no discretion. *Scruggs,* 559 F.Supp. at 105.

A factual issue remains as to date of onset of disability. Claimant alleged she became unable to work in 1975. No evidence appears in the record supporting that date. The bulk of evidence points to a 1980 or 1981 onset date. It is recommended the case be remanded for the limited purpose of determining date of onset of disability.

Although the above recommendation obviates resolution of the constitutional challenge to the regulations, it is deemed appropriate to consider the contentions of the parties as to constitutionality of Regs. 416.-920, 416.921 and 416.922.

Congress has conferred on the Secretary broad authority to establish rules and regulations to implement the Act. *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2639, 69 L.Ed.2d 460 (1981). Section 205(a) [42 U.S.C. § 405(a)] provides:

> "The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this title, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."

Courts must accord such rules and regulations legislative effect. *Batterton v. Francis,* 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977). "Where as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Heckler v. Campbell,* 461 U.S. 458, ——, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983) *citing, Herweg v. Ray,* 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982) and *Gray Panthers, supra.*

In *Wallschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir.1983) the Court of Appeals for the Seventh Circuit assumed the validity of the regulation, according it an interpretation consistent with the statute. As Judge Posner noted at 197:

> "If you do not have a severe impairment you are not disabled even if you have some slight impairment that disables you from performing any work which you have or are qualified to do. But in a practical sense an impairment that prevents an applicant from doing any work he is qualified to do is a severe impairment, for by hypothesis it is totally disabling, and the statute itself—42 U.S.C. § 423(d)(2)(A) again—defines 'severe' in just that practical way."

*See also Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.), *cert. denied,* 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981) (validity assumed); *Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5 (1st Cir.1982) (validity not challenged). Other courts of appeals have discussed the validity of the severity test but have declined to make a definitive ruling with regard to the regulation's validity focusing instead on the Secretary's application of the regulation based on the factual circumstances. *Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983); *Delgado v. Heckler,* 722 F.2d 570 (9th Cir.1983); *Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984). In *Scruggs v. Schweiker,* 559 F.Supp. 100 (D.Tenn.1982), District Judge Morton, while not expressly

invalidating the regulation, held that where the Secretary ends the sequential evaluation at the second inquiry the court would assume for review purposes that, had the evaluation continued, the ALJ would have found plaintiff able to return to his past relevant work. The severity test was expressly upheld in *Moore v. Heckler*, 575 F.Supp. 180 (D.Me.1983). Several cases in this district have criticized the application of the non-severe impairment regulation while not deciding the validity question. *Floyd v. Schweiker*, 550 F.Supp. 863, 868 (N.D.Ill.1982); *Deuter v. Schweiker*, 568 F.Supp. 568 (N.D.Ill.1983); *Hundrieser v. Heckler*, 582 F.Supp. 1231 (N.D.Ill.1984). In *Hundrieser*, Judge Moran "sidestepped" the question of the validity of the severe impairment requirement by interpreting the regulation narrowly and in a manner designed to ensure consistency with both the statutory definition of disability and existing case law noting, "Regulations promulgated pursuant to the Social Security Act must be construed to carry out the clear intent of statutory language." at 1241, *citing Giacone v. Schweiker*, 656 F.2d 1238, 1242 (7th Cir.1982).

In two unpublished opinions, the Tenth Circuit upheld the validity of the severity test in the Regulations, *Chapman v. Schweiker*, No. 81–1025 (10 Cir., Feb. 26, 1982) and *Hilton v. Schweiker*, No. 81–1139 (10 Cir. Feb. 26, 1982), but after rehearing en banc, the full court ordered the opinions withdrawn and remanded the cases to the district court for further development on the question of validity.

A review of these opinions indicates that while some courts deemed the issue required analysis, a dispositive resolution of constitutionality was not required in that the regulations were accorded their proper impact within the legislative intent of the Act itself. Similarly here, the challenge to the Regulations need not be resolved. The review of the Secretary's decision has been conducted in the context of the legislative purpose of the Act and the regulations. It is recommended the Court conclude that the constitutional issue raised by plaintiff is not necessary or essential to a decision in the case and therefore decline to reach the issue.

It is recommended the Court grant the plaintiff's motion for summary judgment reversing the Secretary's decision and deny the Secretary's motion for summary judgment. It is further recommended that remand be ordered for the limited purpose of determining the onset of the date of disability.

Parties are given ten (10) days from date hereof, unless otherwise ordered by the Court, to file exceptions to said Report and Recommendations with the Honorable Milton I. Shadur.

> Respectfully submitted,
> s/ Olga Jurco
> OLGA JURCO,
> United States Magistrate

### On Application For Attorney Fees

On May 22, 1984 this Court adopted Magistrate Olga Jurco's May 1 report and recommendation (1) reversing the determination by the Secretary of Health and Human Services ("Secretary") that Florinor McKenzie ("McKenzie") was not disabled and (2) remanding the case to Secretary for the limited purpose of determining the date McKenzie's disability began. McKenzie has now filed an application for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) ("Section 2412(d)"). For the reasons stated in this memorandum opinion and order, McKenzie's application for fees is granted.

#### *Allowance of a Fee*

Section 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United

States was substantially justified or that special circumstances make an award unjust.

Secretary advances four arguments against such an award:

1. McKenzie is not yet a "prevailing party" because of the remand to Secretary to determine the date McKenzie's disability began.

2. Until Secretary decides when McKenzie's disability began, this Court cannot evaluate the reasonableness of the requested fees in relation to the degree of McKenzie's success.

3. Secretary's position in resisting the disability claim was substantially justified.

4. Any fee award should be reduced because McKenzie's attorney spent time researching and discussing the constitutionality of the regulations, a question neither the Magistrate nor this Court reached.

Each of Secretary's contentions must fail.

1. *Prevailing Party*

██ Courts have found a "yes" answer to either of two questions establishes a claimant as a "prevailing party" in social security benefits cases remanded to Secretary:

1. Did the claimant prevail on the issues before the court? *Knox v. Schweiker,* 567 F.Supp. 959, 964 (D.Del. 1983); *Ceglia v. Schweiker,* 566 F.Supp. 118, 122 (E.D.N.Y.1983).

2. Did the court determine the claimant was entitled to benefits? *McGill v. Secretary of Health and Human Services,* 712 F.2d 28, 31–32 (2d Cir.1983).

In this case, McKenzie has met both criteria. She substantially won the relief she asked of this Court, *and* this Court determined she was entitled to benefits. Only one open question forced a remand: When did McKenzie's entitlement for disability benefits begin? That issue does not at all

affect her status as a person entitled to benefits. She is plainly a "prevailing party" under Section 2412(d).

2. *Ability To Assess Reasonableness of the Fee Requested*

Secretary argues the reasonableness of the requested fee cannot be determined until the question open on remand is decided. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1942, 76 L.Ed.2d 40 (1983) teaches the reasonableness of fees is to be determined in light of the prevailing party's success in getting the requested relief. In *Hensley* the focus was on success in obtaining the types of relief requested (injunctions, reinstatement, back pay), not on the amount of money received. 103 S.Ct. at 1938 & n. 4.

██ Here McKenzie received the relief she requested: a determination she was entitled to benefits. Remand to decide the date her disability began was necessary only to determine the exact amount of, not her entitlement to, benefits. Moreover, remand was required because Secretary failed to make that determination in the first instance, not because McKenzie was in any respect unsuccessful in her claim for relief. Nothing would be added to a *Hensley*-type analysis of the degree of McKenzie's success by awaiting Secretary's decision.[1]

3. *Substantial Justification*

██ Secretary has the burden to establish her position was "substantially justified." That means her case must have had "a reasonable basis both in law and in fact." *Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark,* 720 F.2d 1475, 1481 (9th Cir.1983); *Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir.1983). Secretary urges this case was one where reasonable people could disagree on the question whether McKenzie was disabled, with the

---

1. Indeed this Court ordered Secretary to make her determination on remand within 63 days of May 22, or July 24. McKenzie's July 24 reply brief reflects as of that date Secretary had then taken no action. Even were a delayed decision on fees appropriate (as it is not for the reasons stated in the text), it would work substantial hardship on McKenzie and her counsel to defer the current decision until Secretary sees fit to comply with this Court's order.

Magistrate merely weighing that evidence differently than Secretary had.

Secretary's view of the reasons for this Court's decision in McKenzie's favor is as skewed as Secretary's original position in opposition to McKenzie's benefit claim. Secretary fails to acknowledge she misapplied the existing law on the "severity" requirement, using it as more than a de minimis threshold showing. This Court held if Secretary had properly applied the severity requirement and the correct legal standards in evaluating the existing evidence, Secretary's own regulations *mandated* a finding McKenzie was disabled.

■ Moreover, there is a sharp contrast between this case and the usual situation where remand is required. This Court, in pursuance of its reviewing function, has sent back for administrative review the typical case where evidence needs to be reweighed according to appropriate legal standards. See, e.g., *Willey v. Heckler*, No. 83 C 7087, slip op. at 9 (N.D.Ill. July 16, 1984); *James v. Heckler*, No. 83 C 2968, slip op. at 8 (N.D.Ill. Jan. 10, 1984). By contrast, Secretary's resistance to McKenzie's claim was not substantially justified, for Secretary depended upon a misapplication of existing law.

### 4. *Reduction in Award for Time Spent on Constitutional Claim*

Secretary invokes *Hensley* to claim any fee award should be reduced because McKenzie's lawyer spent time researching and drafting an attack on the constitutionality of Secretary's regulations. As the earlier opinion reflects, that constitutional issue did not have be decided by the Magistrate or this Court, because McKenzie won on other grounds advanced by her counsel.

■ *Hensley* does not support Secretary's argument. McKenzie's attack on the regulations as unconstitutional was just one avenue to achieve success on one claim: the award of benefits. It does not constitute a separate "claim" in the sense *Hensley* uses the term. Hence this Court's failure—or more accurately the absence of any need for this Court—to reach that constitutional issue does not support a reduction in the fee award here.[2] *Hensley*, 103 S.Ct. at 1940.

### *Reasonableness of the Fee*

■ Secretary voices no other objection to McKenzie's requested hours or fees. This Court finds (1) the expenditure of 36 hours and the requested $75.00 hourly rate to be reasonable, and (2) the product of hours times rate establishes a reasonable fee.

### *Conclusion*

McKenzie's petition for attorney's fees in the amount of $2,700 is granted. Secretary is directed to pay that amount promptly (if counsel for the parties are unable to agree on timing, either may bring the matter on by motion).

---

**2.** If pursued to its logical conclusion, Secretary's position would force a litigant's lawyer to choose between (a) staking his or her client's fate on fewer than all the legal contentions the lawyer deems persuasive and (b) risking non-recovery for a substantial part of the lawyer's services. In a meaningful sense that would pit the lawyer against the client—a paradigmatic conflict of interest. That prospect tends to fortify the conclusion Secretary's reading of *Hensley*'s "success" test is wrong.