773 F.2d 108
 Unempl.Ins.Rep. CCH 16,288
Penelope GOTCHES, et al., Plaintiffs-Appellees,
v.
Margaret M. HECKLER, Secretary of Health & Human Services,
and Earl Oliver, C.J. Chamberlain, and Robert A.
Gielow, Officials of the Railroad
Retirement Board, Defendants-Appellants.
 No. 84-1748.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 17, 1985.
Decided Aug. 30, 1985.
 
 Gregory McHugh, Prairie State Legal Services, Rock Island, Ill., for plaintiffs-appellees.
 Gail C. Ginsberg, Asst. U.S. Atty., Chicago, Ill., for defendants-appellants.
 Before POSNER and COFFEY, Circuit Judges, and DUMBAULD*, Senior District Judge.
 DUMBAULD, Senior District Judge.
 The inadvertent inhumanity towards the indigent which inheres in institutionalized and bureaucratized income transfer is illustrated by the case at bar.
 Because appellee Penelope Gotches was enjoying the benefit of benefits under both the Railroad Retirement Act (45 U.S.C. Sec. 231 et seq.) and the Social Security Act (42 U.S.C. Sec. 401 et seq.), the practice "most approved and in use"[1] by the two agencies resulted, upon the death of her husband Steve (on January 2, 1982), in cancellation of all benefits except the Railroad Retirement spousal benefit. Thus the income for the support of this 81 year old widow suddenly dropped from $695 to $105 per month. She was told by the Railroad Retirement Board that it would take five or six months before the Board could compute what she was legally entitled to receive as a surviving widow.
 After her attorney wrote without response to both agencies, suit was filed on April 23, 1982, in the form of a class action seeking relief for the multitude of individuals with dual coverage for benefits. The Board thereupon agreed to increase her interim benefits, and finally decided on May 24, 1982, that she was entitled to $575.90 per month, retroactive to January 1, 1982.
 Though the class action never proceeded to determination of a class, settlement negotiations continued, and on November 16, 1982, a consent decree was entered.
 The consent decree provided for the establishment of procedures for the benefit of other surviving spouses than Mrs. Gotches which averted some of the disadvantages of the former "dual eligibility" cut-off. The Railroad Retirement Board agreed to pay interim benefits equal to the amount of "spouse" benefits under both Acts. Schedules for implementation of the new system, and procedures for verifying compliance and reporting to the Court were also included in the decree.
 The case comes before us in connection with plaintiff's counsel's application for attorney's fees, presenting perhaps the common situation deprecated by Judge Aldisert where the "side-show" eclipses the "main tent," and the inquiry as to the amount of the fee assumes "massive proportions, perhaps even dwarfing the case in chief." Lindy Bros. Inc. v. American Radiator, 540 F.2d 102, 116 (3rd Cir.1976).
 The fee award is governed by the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(b), which permits the award of reasonable "fees and expenses of attorneys, in addition to ... costs ... to the prevailing party in any civil action brought ... against the United States or any agency...." It is further provided that "The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."
 Fees may be denied, under 28 U.S.C. Sec. 2412(d)(1)(A) if the court finds "that the position of the United States was substantially justified or that special circumstances made an award unjust." Fees may also be reduced or denied under 29 U.S.C. Sec. 2412(d)(1)(C) if the prevailing party "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."
 By virtue of these statutory provisions for fees the case at bar is removed from operation of the general "American" rule prohibiting fee-shifting. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 260, 95 S.Ct. 1612, 1616, 1623, 44 L.Ed.2d 141 (1975).
 The government argues that its position was "substantially justified" and that "equitable considerations" exist amounting to "special circumstances" making an award unjust.[2]
 It is hard to find anything inequitable in plaintiff's concern for and efforts to ameliorate the lot of victims of the prior bureaucratic practice. If anything was inequitable (rather than merely ridiculous) it was that prior practice itself. It is difficult to see why the beneficiary of double coverage should suddenly become worse off than if she had had only one string to her bow.
 More meritorious is the government's contention "that the position of the United States was substantially justified." With respect to Mrs. Gotches' own benefits, however, the government's position was clearly not justified, and the District Court correctly held that she was entitled to counsel fees.
 The basic test for determining whether the government's position is "substantially justified" is one of reasonableness. Ramos v. Haig, 716 F.2d 471, 473 (7th Cir.1983); Berman v. Schweiker, 713 F.2d 1290, 1295 (7th Cir.1983); McDonald v. Schweiker, 726 F.2d 311, 316, (7th Cir.1983); Bittner v. Sadoy & Rudoff, 728 F.2d 820, 830 (7th Cir.1984).
 On this issue the District Court's discussion is persuasive and evinces no abuse of discretion:
 In the present case, Mrs. Gotches was unable to secure relief from the agency after her benefits were reduced from $691.00 per month to $105.00 per month. Both agencies must have been aware that regardless of which of the two eventually assumed payments of Mrs. Gotches' survivors benefits, her benefits would exceed $105.00 per month. Yet when presented with Mrs. Gotches' problem, the agencies did not voluntarily raise her level of benefits. Rather, the government chose to defend its policy in litigation and filed a motion to dismiss or, in the alternative, for summary judgment. In order for the government to show that its position was substantially justified, it must show that the decision to litigate had a reasonable basis in law and fact.... In this case, the decision to litigate, with the knowledge that Mrs. Gotches was entitled to a survivors benefit larger than the interim benefit which she was receiving cannot be considered reasonable.
 The litigation instituted by plaintiff has indeed fulfilled the policy of Congress to vindicate the public interest by encouraging "private attorneys general." She is clearly entitled to her reasonable attorney's fees, to be determined by the District Court, for her valuable public service in improving the efficiency of government operations.
 However, with respect to other parties affected by the class action, we are of opinion that the government was substantially justified in continuing its opposition. No determination of class membership was ever made. Negotiations for the benefit of other victims of the governmental snafu, as distinguished from the original client Mrs. Gotches, were carried on by counsel at his own risk as a matter of pro bono publico service. Even though some relief was obtained for other victims, he never fully prevailed and won a complete victory. The government might properly resist large-scale class-action litigation seeking institutional restructuring and possibly involving some degree of on-going supervision by a federal court.
 A district court may award attorney fees to a prevailing party under 28 U.S.C. Sec. 2412(d) unless the position of the government was "substantially justified." This court has interpreted "substantially justified" to mean reasonable. Ramos v. Haig, 716 F.2d 471, 473, (7th Cir.1983). Further, "[t]he government must have a solid though not necessarily correct basis in fact and law for the position it took in this action." McDonald v. Schweiker, 726 F.2d 311, 316, (7th Cir.1983). The parties entered into settlement negotiations on the class action claim a short time after this suit was filed in the district court. Although the parties agreed on several points and several procedures were implemented by the Board during the negotiations, the settlement negotiations collapsed over the computerization of the claims of plaintiffs who received their benefits under an earlier version of the Railroad Retirement Act, referred to in the consent decree as Old Act cases.
 The Board was willing to computerize cases arising under the Railroad Retirement Act of 1974 ("New Act Cases") but was unwilling to make an absolute commitment to computerizing the Old Act cases at some point in the future; according to the record, the Board wanted to obtain experience with computerizing the New Act cases before making a long-range commitment to computerizing the Old Act cases. During an in-chambers conference, the district court judge persuaded the plaintiffs that the Old Act claimants would be adequately protected by the Board's commitment to:
 "give serious consideration to computerizing 'Old Act' cases, once it has sufficient experience with 'New Act' cases to evaluate the effectiveness of computerizing that process, and thereby pay interim benefits equal to the combined RRB and SSA spousal benefits pending adjudication of the survivor's status."
 An affidavit submitted by the Board Director after the consent decree was entered demonstrates that the Board's reservation about computerizing the Old Act cases was well founded. Robert S. Kaufman, the Director of the Board, stated that the number of Old Act cases coming before the Board is constantly declining; that the Board's lack of access to Social Security payment information would substantially complicate the Board's computerization effort; that the Board's resources have been further taxed by Social Security legislation enacted after the consent decree; and, that the old Act cases would eventually be computerized as part of the implementation of a new computerized payment system for all claims.
 This court will not award attorney's fees under the Equal Access to Justice Act if the government had "a solid though not necessarily correct basis in fact and law for the position it took ..." McDonald, 726 F.2d at 316. As the foregoing review of the facts demonstrates, the government's resistance to an immediate computerization of the Old Act cases was reasonable. Hence, the government's refusal to "cave-in" was substantially justified as that term is used in The Equal Access to Justice Act.
 
 
 1
 Therefore it is necessary to remand this case to the District Court for a specific determination of the amount of fees earned up through May 24, 1982, the date when the Railroad Retirement Board agreed to award increased benefits to Mrs. Gotches.
 
 
 2
 This should be a simple time-based calculation since the government has not objected to the reasonableness of the hourly rate or the method of computation, but merely to payment of fees for services with respect to which the government's position was thought to be substantially justified. Since this Court has clarified the lines of demarcation with respect to that issue, the parties and the District Court should have no difficulty in arriving at an appropriate figure.
 
 
 3
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.
 
 
 4
 POSNER, Circuit Judge, concurring.
 
 
 5
 I agree with the result in the majority opinion but have reservations about some of its reasoning and about what seems to me the opinion's unduly harsh tone of criticism of the government. I shall therefore explain my own reasons for reaching the same result.
 
 
 6
 The Equal Access to Justice Act, which expired recently but remains applicable to this case, allows a prevailing party in a suit by or against the federal government to recover his attorney's fees and related expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A). The government appeals from an award of fees and expenses to the plaintiffs of slightly less than $13,000, and the issue is whether this amount or some part of it must be abated because of the statutory language I have quoted.
 
 
 7
 Penelope Gotches, the named plaintiff in this class action, was married to Steven Gotches, who until his death received benefits under both the Railroad Retirement Act and the Social Security Act, while she received spouse benefits. Between them the Gotches received almost $700 a month in benefits. On January 2, 1982, Mr. Gotches died. His entitlement to benefits died with him. Mrs. Gotches, however, became entitled to survivor benefits. But under the law survivor benefits cannot be paid to the same person by both the Railroad Retirement Board and the Social Security Administration. When a person dies who has been receiving benefits from both agencies, the Railroad Retirement Board must determine which agency will pay survivor benefits, and that agency must then determine how much to pay.
 
 
 8
 As required by law, both the Railroad Retirement Board and the Social Security Administration terminated Mr. Gotches' retirement benefits and Mrs. Gotches' spouse benefits upon his death. At the same time the Board began paying Mrs. Gotches $105 a month as an interim survivor's benefit pending determination of her full entitlement to such benefits. The Board wrote her to this effect on February 23 but did not indicate when she would start to receive her full survivor benefits; at the time, about half of all survivor claims were paid within 90 days, 70 percent within 120 days, and 99 percent within six months. The letter said, "If you have any questions about your claim, you may get in touch with any social security office."
 
 
 9
 On April 9, more than 90 days after Mrs. Gotches' claim for survivor's benefits had first accrued and while she was still receiving her modest interim benefit, the Board received a letter from her lawyer, dated April 6. The letter said, "she needs as much income as she is legally entitled to immediately." On April 23, the Board not having replied, suit was filed against both the Board and the Social Security Administration on behalf of Mrs. Gotches and all other survivors of "dual insureds." The suit sought immediate payment of survivor benefits that were due Mrs. Gotches and injunctive relief to prevent future delays in the payment of such benefits to members of the class. On May 24, 1982, a month after the suit was filed and almost five months after her husband's death, Mrs. Gotches was awarded a survivor's benefit of $575.90 a month, retroactive to January 1, the day before her husband's death. The injunctive part of the suit continued until November 16, 1982, when the judge signed a consent decree which provides for higher interim payments, computerized processing of claims, and other methods of ameliorating the hardships that are caused when the payment in full of survivor benefits is delayed because of the legal ban on paying both railroad retirement and social security benefits to the same survivor.
 
 
 10
 To apply the Equal Access to Justice Act to this lawsuit, the suit must be decomposed into two phases. Phase I is the suit for Mrs. Gotches' survivor benefits, and ended on May 24 when she received them, retroactive to January 1. Phase II is the suit for an injunction; it ended, with the entry of the consent decree, six months after Mrs. Gotches was paid. As to Phase I, it seems reasonably clear that the government's defense was not "substantially justified." Although the government responded to the complaint by filing a motion to dismiss, it has not indicated what the legal grounds for the motion were. There never was any doubt that Mrs. Gotches was entitled to survivor's benefits substantially exceeding $105 a month and no reason has been forthcoming on why the government set her interim benefit so low. Maybe an argument could be developed that Mrs. Gotches had no legal right to immediate payment of any particular level of benefits--that her only legal right was to full retroactivity whenever the government finally got around to processing her claim. But the government's effort to develop such an argument is perfunctory and does not persuade me (as it did not persuade the district court) that the government was substantially justified in filing a motion to dismiss the complaint, thus forcing Mrs. Gotches to litigate for a month before the government "caved." If it had taken the government a month to make a responsible decision on how to respond to her complaint, then, as I shall show in connection with Phase II of the case, there would be substantial justification; but the government does not argue that in connection with Phase I.
 
 
 11
 The government's main argument about Phase I is that Mrs. Gotches sued prematurely. This is an appeal to "special circumstances," the other statutory basis for refusing to award attorney's fees. The government is correct in pointing out that if someone sues it to get a benefit that he could get for the asking without incurring the expense of suit, he cannot get an award of attorney's fees; the expense of the suit is caused by his own precipitance, not the government's obduracy. But the district court was entitled to find, on the present record, that filing a suit was necessary to spur the agencies to grant Mrs. Gotches the benefits to which she was entitled. The letter that the Board received on April 9 demanding immediate payment should have alerted the Board to the possible existence of an emergency that required quick action. Maybe if Mrs. Gotches' name were Rockefeller the fall in her government benefits from almost $700 to barely $100 a month would have caused no perturbation. But most widows of retired railroad workers are not wealthy, and Mrs. Gotches' lawyer was entitled to conclude when he received no answer to his letter for more than two weeks that he had better sue if he wanted her to get higher benefits quickly. He made a prudent choice for which he and his client should not be penalized.
 
 
 12
 But regarding Phase II, the injunctive part of the case, the government's position must as a matter of law be regarded as substantially justified, once the nature of that position is correctly apprehended. The government did not oppose injunctive relief to speed up the processing of claims of dual insureds, though it might have, cf. Heckler v. Day, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984); Wright v. Califano, 587 F.2d 345 (7th Cir.1978); and Deloney v. Califano, 488 F.Supp. 610 (N.D.Ill.1980). What the government did was not opposition; it was analysis and consideration followed by acquiescence in the core though not the details of the plaintiffs' demands.
 
 
 13
 When the federal government is confronted by a demand to make far-reaching changes in the administration of major programs, under the supervision of a federal judge, the public interest is disserved if the government simply caves in and signs a consent decree drafted by the plaintiffs' counsel, without careful consideration of the costs, consequences, and ramifications. Government by judicial decree is not yet the norm in this country, and a public agency does neither the courts nor the taxpaying public a favor when it consents too readily to the entry of a far-reaching decree curtailing its freedom of action. It was prudent for the government to take several months to consider and negotiate over the plaintiffs' proposals. See Ashburn v. United States, 740 F.2d 843, 850-51 (11th Cir.1984); White v. United States, 740 F.2d 836, 842 (11th Cir.1984); Alspach v. District Director of Internal Revenue, 527 F.Supp. 225, 229 (D.Md.1981); Brener Bldg. Maintenance Co. v. United States, 8 Cl.Ct. 277 (1985). As a matter of fact the decree signed in November 1982 followed closely the government's proposals submitted to the plaintiffs in May. The six months were well spent. Government must not be deterred from successful settlement negotiations by having to pay in effect double attorney's fees, its own and the plaintiffs', during the period of negotiation.
 
 
 14
 This would be a considerably more difficult case if we had to decide whether "substantial justification" refers just to the government's litigating position, or whether it refers as well to the position taken by the government before litigation. Once it was sued, the government acted reasonably in negotiating the consent decree that ended the suit. But it is less clear that before then the government had been reasonable to take as long as it often did to determine survivors' benefits, having cut off the survivor, at the death of her spouse, from what must in most cases be vitally needed income. The circuits are divided on the relevance under the Equal Access to Justice Act of the government's prelitigation position. See Temp Tech Industries, Inc. v. NLRB, 756 F.2d 586, 589-90 (7th Cir.1985); Comment, The Equal Access to Justice Act in the Federal Courts, 84 Colum.L.Rev. 1089, 1101-11 (1984). Our circuit has not spoken to the question. See Temp Tech Industries, Inc. v. NLRB, supra, 756 F.2d at 590. Although if the prelitigation position is relevant, the government's case here is undermined, the plaintiffs' counsel does not argue that it is relevant; his position is that the government's prelitigating and litigating positions were the same, and he therefore does not challenge the district court's ruling that only the litigating position is relevant. But they were not the same. Before the litigation began the government acted as if it had no obligation to expedite the payment of survivors' benefits; after the litigation began it took the position that it would agree to an appropriate consent decree requiring expedition. The difference is fundamental, and the litigating position, at least, was reasonable, or in the language of the statute "substantially justified." Naturally we will not overturn the district court's ruling on a difficult question--the (ir)relevance of the government's prelitigating position--when the party who would benefit from that overruling does not ask us to.
 
 
 15
 All this assumes that the government would have had no solid basis in fact or law (the meaning of not "substantially justified," McDonald v. Schweiker, 726 F.2d 311, 316 (7th Cir.1983)) for resisting, as distinct from tempering, the plaintiffs' demands; for if it would have had a solid basis, there would be no occasion to distinguish between resistance and negotiation as possible "positions." But it is not necessary to decide that issue either. Even if the plaintiffs had an unquestionable right to speedier procedures for paying survivor benefits to the survivors of dual insureds, the government had solid justification for taking time to consider and to reformulate the plaintiffs' specific proposals.
 
 
 16
 All this may seem to overlook a more direct route to the conclusion that the government is not liable for attorney's fees in Phase II. The suit was a class action with Mrs. Gotches the only named plaintiff. Her claims were fully satisfied on May 24 and became moot, for the government's tardiness in commencing the payment of survivor benefits could no longer harm her. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 104, 109, 103 S.Ct. 1660, 1666, 1669, 75 L.Ed.2d 675 (1983). This would not have mattered if another class member had been named as plaintiff before the class was certified, but none ever was; the class, in fact, was never certified.
 
 
 17
 This would suggest that when the consent decree was signed, the suit was moot. See, e.g., Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975); Parks v. Pavkovic, 753 F.2d 1397, 1403 (7th Cir.1985); Dudley v. Stewart, 724 F.2d 1493, 1494-95 (11th Cir.1984); Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1041 (5th Cir.1981). An argument could be made that since no named plaintiff would have a claim outstanding for more than a few months (unless he was in the extreme tail of the claims-processing distribution), this is a case capable of repetition but evading review (because each individual case becomes moot before the judicial process can be completed), so that it falls within an exception to the rule that moot cases are not justiciable. See Inmates of Lincoln Intake & Detention Facility v. Boosalis, 705 F.2d 1021, 1023 (8th Cir.1983); 13A Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3533.9, at pp. 418-21 (2d ed. 1984). Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), is to the contrary, however; it requires "a reasonable expectation that the same complaining party would be subjected to the same action again" (id. at 149, 96 S.Ct. at 349, emphasis added), and that feature is missing here. But moot or not, the suit--and the consent decree, even if it is void--achieved its goal; the payment procedures have been speeded up. Whether a plaintiff can be said to be a prevailing party for attorney's fees purposes if the case becomes moot is an unresolved issue. See Comment, Civil Rights Attorney's Fees Awards in Moot Cases, 49 U.Chi.L.Rev. 819 (1982). But this issue and its application to the unusual facts of this case, like the underlying issue of mootness itself, need not be resolved in this case, the government having prevailed on other grounds on its challenge to the claim for attorney's fees in Phase II.
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 To use a Presbyterian locution
 
 
 [2]
 It is also argued that plaintiff was not a "prevailing party." This contention is almost frivolous. As the District Court observed:
 Within eleven days of service of process on the defendants, Mrs. Gotches' benefits were increased from $105.00 per month to their proper level of $575.00 per month. Certainly it can be inferred that the prompt increase in Mrs. Gotches' benefits was directly related to the filing of her lawsuit.
 Furthermore, ... the Railroad Retirement Board agreed to provide class-wide relief to surviving spouses of those persons insured under both ... Acts. Through the litigation process Mrs. Gotches was able not only to secure benefits for herself, but for others similarly situated.... Clearly she must be considered a prevailing party.
 Inclusion of this issue in defendants' 40 page brief indicates that the government is fighting "tooth and nail" [726 F.2d at 317]. The residuals of over a century of sovereign immunity make it hard to accept an innovative Congressional policy with respect to fees.