**UNITED STATES of America, et al., Petitioners-Appellees,**

v.

**KEMPER MONEY MARKET FUND, INC., et al., Respondents,**

**and**

**Robert L. Wenz & Merrick Consultants, Ltd., Intervening Respondents-Appellants.**

**No. 84–2399.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1985.

Decided Jan. 17, 1986.

---

**1270**

George L. Hastings, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for petitioners-appellees.

Barry T. McNamara, D'Ancona & Flaum, Chicago, Ill., for respondents.

Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

Taxpayers petitioned for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412,[1] and Federal Rule of Civil Procedure 37. They also submitted a bill of costs based upon the Equal Access to Justice Act. The district court denied taxpayers' petition for fees and bill of costs on the grounds that taxpayers were not "prevailing parties" under the Equal Access to Justice Act and that the government's position was substantially justified. Because we conclude that the position of the United States in its action to enforce four civil tax summonses was substantially justified, we affirm the district court's denial of attorneys' fees and costs.

**I**

The Internal Revenue Service ("IRS") has conducted an ongoing investigation of the federal income tax liabilities of Robert L. Wenz and Merrick Consultants, Ltd., ("taxpayers") for the years 1976 through 1979. Merrick is an Illinois corporation; Wenz is its president. In the course of its investigation the IRS learned that taxpayers maintained accounts at four Chicago financial institutions, namely, the Kemper Money Market Fund, Inc., the Continental Illinois National Bank, the Northern Trust Bank and the First National Bank of Highland Park. In February and March of 1982 it issued civil summonses to these institutions requiring the production of the records for taxpayers' accounts. Taxpayers, acting pursuant to 26 U.S.C. § 7609,

---

1. This case is subject to the Equal Access to Justice Act Amendments of 1985, Pub.L. No. 99–80, 99 Stat. 183 (August 5, 1985), which statute provides that "the amendments made by this Act shall apply to cases pending on or commenced on or after the date of enactment of this Act." *See id.* § 7(a), 99 Stat. at 186; *see also* H.R.Rep. No. 120, 99th Cong., 1st Sess. 11 (1985), U.S.Code Cong. & Admin.News 1985, 132, 139 ("The changes made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981."); *cf. Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981) (" '[A]n appellate court must apply the law in effect at the time it renders its decision.' "). Because this case is pending on and after August 5, 1985, the 1985 amendments apply. The amendments, however, do not affect our disposition of this appeal.

directed the institutions not to comply with the summonses.

On June 3, 1982 the IRS petitioned for enforcement of the summonses. The district court on June 15, 1982 ordered each institution to show cause why the summons issued to it should not be enforced. The institutions did not oppose enforcement of the summonses and are no longer parties to this case. Taxpayers were served with the petitions and show cause orders on June 29, 1982. They moved to intervene in the enforcement action under 26 U.S.C. § 7609(b)(1) on July 23, 1982. The IRS opposed taxpayers' intervention on the grounds that the motions were untimely and were unsupported by affidavits. The district court denied taxpayers' motions to intervene on August 19, 1982. It, however, stayed enforcement of the summonses pending appeal.

The district court denied intervention on the ground that taxpayers had failed to prove that the IRS sought enforcement of the civil summonses solely for the purpose of gathering evidence for a criminal prosecution of taxpayers. Section 7602 of the Internal Revenue Code, as it read at the time the summonses were issued, authorized the IRS to issue a summons to determine and to collect a taxpayer's civil tax liability. The then-controlling caselaw under section 7602 held that the section authorized the IRS to issue a summons for a joint investigation of a taxpayer's civil and criminal liabilities, but did not permit the IRS to enforce a summons if it had made an institutional commitment to criminally prosecute the taxpayer. *See United States v. LaSalle National Bank,* 437 U.S. 298, 313–17, 98 S.Ct. 2357, 2365 67, 57 L.Ed.2d 221 (1978). The district court concluded that taxpayers did not prove that the IRS had an improper purpose and denied their motions to intervene.

We reversed the district court's denial of taxpayers' motions to intervene. *United States v. Kemper Money Market Fund, Inc.,* 704 F.2d 389 (7th Cir.1983). We held that taxpayers' motions were timely. We therefore ordered that taxpayers be permit-

ted to intervene and to serve interrogatories to determine whether the IRS in fact sought enforcement of the summonses solely for the purpose of criminal prosecution of taxpayers. *See United States v. Kis,* 658 F.2d 526 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). In *United States v. Kis,* we set forth the proper procedure for enforcement of a civil tax summons. First, the IRS must prove a prima facie case for enforcement. It does so by submitting affidavits showing that (1) the investigation has a legitimate purpose, (2) that the summonses are relevant to the investigation, (3) that the IRS does not already possess the information sought, and (4) that the IRS has followed certain administrative steps. Second, the taxpayer must allege specific facts either to rebut the government's prima facie case or to support an affirmative defense. To meet this burden, the taxpayer is entitled to discovery of (1) the identities of the investigating agents, (2) the date the investigation began, (3) the dates the agents filed reports recommending prosecution, (4) the date the district chief of the Criminal Investigation Division recommended prosecution, (5) the date the Office of Regional Counsel referred the case for prosecution, (6) the dates of all summonses and (7) the nature of any contacts between the investigating agents and the Department of Justice concerning the investigation. The district court may order additional discovery it believes appropriate. Third, the district court must order a hearing if the taxpayer has alleged "specific facts that permit an inference of a possibility of some improper purpose on the part of the Government." 658 F.2d at 544. The taxpayer bears a heavy burden at this hearing to prove that the summons was issued for an improper purpose.

On remand, the district court granted taxpayers leave to intervene. Taxpayers opposed enforcement of the summonses for three reasons. They argued that (1) the IRS sought enforcement of the summonses solely for the purpose of criminal prosecution, that (2) the summonses were overbroad, and that (3) the IRS already pos-

sessed some of the information sought. In support of their contention that the IRS had an improper purpose, taxpayers made five allegations: first, IRS Special Agent David Swire advised Wenz of his fifth amendment rights at the start of the meeting between Wenz and Swire; second, the U.S. Postal Service conducted a mail cover surveillance of taxpayers' mail for the IRS; third, taxpayers' telephone lines, according to Wenz's affidavit, were tapped; fourth, taxpayers were among 163 tax shelter promoters described in an IRS press release as being under criminal investigation; and finally, the IRS was delaying its civil investigation in favor of its criminal investigation. These facts, taxpayers argued, raised a "possibility of an inference" of an improper motive on the part of the government sufficient to require a hearing under *United States v. Kis*, 658 F.2d at 544. The IRS filed responses to the so-called *Kis* interrogatories on June 10, 1983. It disclosed that David Swire and Irving Feinglass were the investigating agents, that the investigation began on March 5, 1980 and that the four summonses were issued in February and March of 1982. It stated that "[n]o reports were filed recommending prosecution by any agent."

The district court concluded on July 15, 1983 that taxpayers had alleged specific facts that raised a possibility of an inference of an improper criminal purpose on the part of the IRS. It ordered a hearing to determine whether the IRS sought enforcement of the summonses solely for the purpose of criminal prosecution of taxpayers. In preparation for the hearing, taxpayers sought additional discovery beyond that required by *United States v. Kis*, 658 F.2d at 544. The government resisted such discovery on the ground that its files contained privileged information. The district court ordered the government to submit all possibly relevant documents to the court for an *in camera* review.

On August 19, 1985 the district court conducted the first of three ex parte meetings with the government concerning the documents submitted under seal. A court reporter transcribed the meeting. The dis-

trict court informed taxpayers that it had held the meeting and had ordered a transcript to be available for appellate review. One document discussed in the ex parte meeting was the supplemental affidavit of Francis J. Emmons, an attorney employed by the IRS Chief Counsel's Office in Chicago. Emmons reviewed Swire's files to determine whether the IRS had recommended or had delayed recommending criminal prosecution of taxpayers. Emmons's supplemental affidavit states:

> [M]y review of Special Agent Swire's files revealed that he had attempted to have his investigations of Mr. Wenz and Merrick Consultants, Ltd., transferred to a Federal investigative grand jury on two separate occasions ....
>
> On August 20, 1981, Special Agent Swire made his original request to have an investigation of Mr. Wenz, Merrick Consultants, Ltd., and others conducted through a Federal Grand Jury. This request was approved by the Assistant Regional Commissioner, Criminal Investigation Division, Midwest Region, Internal Revenue Service, but was declined by the Office of Chief Counsel, Internal Revenue Service, prior to referral to the Department of Justice. The declination memorandum dated October 15, 1981, cites a variety of reasons for not approving the request .... On December 4, 1981, the Criminal Investigation Division in Chicago prepared a document entitled "Request for Reconsideration for Grand Jury Investigation," but this request was not approved by the Midwest Regional Commissioner's Office.
>
> On June 14, 1983, Special Agent Swire prepared a second request for authorization for a Federal grand jury investigation of Mr. Wenz and others .... Although the files fail to show that this request was approved by the Regional Commission's Office, Special Agent Swire informed me that he had been told that it had been approved by the Regional Commission's Office and was now

pending before the Chief Counsel's Office.[2]

At the ex parte meeting, the district judge noted that Swire twice had requested a grand jury. He opined that the government's response to taxpayers' interrogatories that "[n]o reports were filed recommending prosecution by any agent" may not have been proper. The government argued that its statement was correct because an agent's request within the IRS for a grand jury investigation is not an institutional recommendation by the IRS to the Department of Justice to prosecute taxpayers. The district judge at the conclusion of the ex parte meeting stated that he would not order disclosure of the two grand jury requests.

On August 24, 1983, after an *in camera* review of the documents submitted under seal and the ex parte meeting with the government, the district court ruled on the record that "[t]here are no documents that state that an institutional commitment has been made to criminally prosecute the taxpayer." It ordered that

[s]ince the taxpayer will have the opportunity to examine government witnesses at the hearing, the taxpayer will not need to refer to these documents in order to question the government officials on the relevant merits of the case. Therefore, the documents shall remain under seal .... The government shall make available for questioning the individuals who conducted the file reviews.

The district court conducted the *Kis* hearing on October 4 and 5, 1983. In addition to calling Kevin Flynn, Wenz's former counsel, and Wenz himself, taxpayers ex-

tensively questioned five IRS officials: James Starkey, District Director of the Chicago IRS office; David Swire, the Special Agent in charge of the criminal investigation; Debora Kerwin, a Special Agent who had assisted Swire in the investigation of taxpayers; Irving Feinglass, the agent in charge of the civil investigation; and Frank Emmons, the attorney in the Chief Counsel's office who had reviewed Swire's and Feinglass's files. In the course of the hearing, taxpayers' counsel asked Emmons: "In all of the files, in all of the documents that you examined in connection with your August examination, did you see any prosecution recommendations pertaining to Wenz or Merrick?" Emmons answered "[n]o."

The district judge conducted the second of three ex parte meetings with the government on October 26, 1983. At the start of the meeting, the district judge expressed his concerns that Emmons's answer that he had seen no recommendations of prosecution was "misleading to the taxpayer," although not wrong per se, and that "the taxpayer should have the right of cross-examination of the current status of the recommendation [of a grand jury] that was made." The government restated its position that the request for the grand jury is not the functional equivalent of a recommendation for prosecution and, therefore, should not be disclosed to taxpayers. It stated that it would suffer dismissal of the enforcement action rather than reveal to taxpayers the requests for a grand jury.

On November 1, 1983 the district court conducted the third and final ex parte meeting with the government. The district

---

**2.** We are reluctant to reveal the contents of transcripts or documents under seal when disclosure would handicap government investigations. After a close examination of the lengthy record in this case, we are confident that disclosure of that portion of Emmons's supplemental affidavit that concerns grand jury requests will in no way hinder any ongoing investigation of taxpayers in view of the government's disclosure in its brief of the ongoing grand jury investigation. Such disclosure, however, is necessary for us to articulate fully the reasons for our decision.

The government has stated in its appellate brief that the investigation of taxpayers was transferred to the Department of Justice in February 1984 and that a grand jury investigation has subsequently been undertaken. The two requests for a grand jury investigation of taxpayers were made in August 1981 and June 1983. The first was denied; the second was pending when the district court dismissed the enforcement action in December 1983. Thus, the most recent request was made over two years ago and its approval was known to taxpayers.

judge stated his opinion that *United States v. Kis* required disclosure of the requests for the grand jury to afford taxpayers a complete hearing. The government reaffirmed its position that the requests were not proper subjects of discovery. Consequently, the district court on December 13, 1983 dismissed the enforcement action pursuant to Federal Rule of Civil Procedure 37 as a sanction for the government's refusal to comply with its discovery order. In its order, the district court informed taxpayers that it twice had met ex parte with the government and had transcribed the meetings. The government did not pursue an appeal from this ruling.

Taxpayers filed a bill of costs and a petition for fees on December 23, 1983. After briefing and oral argument, the district court denied taxpayers' motion on July 17, 1984, 594 F.Supp. 185. This ruling rested on two grounds. First, the court concluded that taxpayers were not "prevailing parties" for the purposes of the Equal Access to Justice Act or Federal Rule of Civil Procedure 37 because they had not prevailed on a substantive issue. Second, the court found that the government's position, although unsuccessful, was substantially justified. Taxpayers filed a notice of appeal on August 16, 1984.

The government noted in its brief on appeal that the investigation of taxpayers was transferred to the Department of Justice in February 1984, two months after the district court dismissed the enforcement action. A grand jury investigation was subsequently undertaken.

## II

We will discuss, first, taxpayers' claim for attorneys' fees under the Equal Access to Justice Act, second, their claim for attorneys' fees under Rule 37, and, finally, their bill of costs.

## A

The Equal Access to Justice Act provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded ..., incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Taxpayers raise three issues under the Act that we will consider first. They contend that, on the facts of this case, we should review *de novo* the district court's determination that taxpayers were not "prevailing parties" for the purpose of section 2412(d)(1)(A). Next, they assert that they were prevailing parties. Finally, they argue that "the position of the United States" as used in section 2412(d)(1)(A) refers to both the government's underlying action and the litigation positions that it took in that action.

Taxpayers argue and the government agrees that the deference due a district court's determination that a government position is or is not substantially justified depends on the nature of that determination. A governmental "position is substantially justified if it has a 'reasonable basis in law and fact.'" *Temp Tech Industries v. NLRB*, 756 F.2d 586, 590 n. 4 (7th Cir. 1985) (quoting *Ramos v. Haig*, 716 F.2d 471, 473 (7th Cir.1983)). Both parties suggest that a finding that a government position lacks a reasonable basis in fact should be reviewed for clear error, whereas a determination that the government's position is a reasonable interpretation of law should be reviewed *de novo*. See *United States v. First National Bank of Circle*, 732 F.2d 1444, 1449–51 (9th Cir.1984) (Norris, J., concurring); *Spencer v. NLRB*, 712 F.2d 539, 561–65 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

The parties disagree, however, as to which standard of review should apply to the district court's determination that the IRS's decision not to disclose the grand jury requests was a reasonable action to protect the secrecy of its investigations, and hence, substantially justified. Taxpayers urge review *de novo* on the ground that the district court's determination, though

cast as a finding of fact, is a conclusion of law. The IRS contends that taxpayers' challenge that the IRS made an institutional commitment to prosecute raises a question of fact warranting deferential review, whereas taxpayers' argument that the IRS should have foreseen the district court's adverse discovery order with which it would not comply raises a question of law subject to plenary review. We note that this court twice has reviewed determinations as to whether the government's position was substantially justified under a "clearly erroneous" standard of review. *See Ferrell v. Pierce,* 743 F.2d 454, 466 (7th Cir.1984); *Ramos v. Haig,* 716 F.2d 471, 473–74 (7th Cir.1983). We express no opinion as to the appropriate standard of review in this case because, for the reasons stated below, we agree with the district court's determination, under either standard of review.

Secondly, taxpayers contend that they are "prevailing parties" for the purpose of the Equal Access to Justice Act. The district court ruled, however, that they did not prevail because they did not win on any substantive issue. Taxpayers argue that the court's construction of the concept of "prevailing party" is too narrow. They maintain that by frustrating enforcement of the summonses they obtained the result that they had sought, and hence, have prevailed. *Cf. Continental Web Press v. NLRB,* 767 F.2d 321, 323 (7th Cir.1985) ("a party 'prevails' if [it] wins a substantial part of what [it] sought"). The government took no position on this issue before

this court. It contends that the issue need not be reached because its position was substantially justified. We agree with the government for reasons we state below. We, nevertheless, note without comment that there exists authority for the proposition that a litigant must win on a substantive issue to be a prevailing party. *See, e.g., Austin v. Department of Commerce,* 742 F.2d 1417, 1420–21 (Fed.Cir.1984); *Kitchen Fresh, Inc. v. NLRB,* 729 F.2d 1513, 1513 (6th Cir.1984); *see also Rico-Sorio v. U.S. Immigration and Naturalization Service,* 552 F.Supp. 965, 968 (D.Or. 1982); *cf. Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam) ("procedural or evidentiary rulings ... [are] not matters on which a party can 'prevail' for the purposes of shifting his counsel fees to the opposing party under [42 U.S.C. §] 1988").[3]

Thirdly, taxpayers read "the position of the United States" as used in section 2412(d)(1)(A) to refer to both the government's underlying action and the litigating positions it took in that action. According to this interpretation, a prevailing party would be entitled to an award of fees if either the government's underlying action or any of the positions it took while litigating the action lacked a reasonable basis in fact or in law. The government suggests that the statutory language refers only to the government's litigating position. The parties each cite authority from a number of circuits; taxpayers argue that the trend supports their reading, whereas the government contends that the majority of

---

3. At least one circuit has distinguished between prevailing on a purely interlocutory procedural issue, which would fall outside the Equal Access to Justice Act, and winning the entire case on procedural grounds, which might come within the statutory authorization of fees. *See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521 (D.C.Cir.1985) (awarding fees under the Lanham Act, 15 U.S.C. § 1117(a), to defendants that obtained dismissal of plaintiff's trademark suit on the ground of improper venue). According to this interpretation of "prevailing party," if the government's position was not substantially justified, taxpayers would be entitled to fees because they won dismissal of the entire enforcement action on the issue of

discovery. Because we conclude that the government's position was substantially justified, we will not decide whether the distinction between prevailing on an interlocutory issue and winning the entire case on procedural grounds is in keeping with the Equal Access to Justice Act. We note, however, that the Supreme Court twice has held that a litigant must achieve some success on the merits to be awarded fees under similar statutes. *See Ruckelhaus v. Sierra Club,* 463 U.S. 680, 688, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (Clean Air Act, 42 U.S.C. § 7607(f)); *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (42 U.S.C. § 1988).

the circuits has adopted its interpretation. We recently have noted the split of authority on this issue, *see Temp Tech Industries v. NLRB*, 756 F.2d 586, 589–90 (7th Cir. 1985) (citing cases), and twice have found it unnecessary to resolve the question. *See id.* at 590; *Ramos v. Haig*, 716 F.2d 471, 473 n. 2 (7th Cir.1983). Again we will not decide the issue because the government's position, however defined, was substantially justified. *Cf. Spencer v. NLRB*, 712 F.2d 539, 551 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) ("[I]n the large majority of contexts, it makes no functional difference how one conceives of the government's 'position.' "). Although we express no opinion on the issue as presented in this case, we observe that Congress has clarified the question in the context of cases concerning the legality of an underlying agency action. It amended the Equal Access to Justice Act to read that the " 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." Pub.L. 99–80, 99 Stat. 183, 185 (Aug. 5, 1985).

■ Taxpayers assert that five positions of the government were not substantially justified: the institution of the enforcement action; the opposition to taxpayers' intervention; the opposition to the *Kis* hearings; the opposition to additional discovery; and the refusal to comply with the district court's discovery order. We will examine each one in turn to determine whether the government's position had a " 'reasonable basis in law and in fact.' " *Temp Tech Industries v. NLRB*, 756 F.2d 586, 590 n. 4 (7th Cir.1985) (quoting *Ramos v. Haig*, 716 F.2d 471, 473 (7th Cir.1983)). In other words, "the government must have a solid though not necessarily correct basis in fact and law for the position that it took in this action." *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983). The government bears the burden of proving that its position was substantially justified. *Ferrell v. Pierce*, 743 F.2d 454, 466 (7th Cir.1984).

■ In order to examine the reasonableness of the government's positions, it is necessary to understand the caselaw under the statute authorizing issuance of the tax summonses. As it read when the summonses were issued, 26 U.S.C. § 7602 authorized the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." The Supreme Court construed this language to permit the IRS to issue a summons to conduct a solely civil investigation or a joint investigation of civil and criminal tax liability, but not a solely criminal investigation to gather evidence for prosecution. *See United States v. LaSalle National Bank*, 437 U.S. 298, 316–17, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978). Consequently, taxpayers under investigation by the IRS routinely challenged enforcement of civil tax summonses on the ground that the government had a "solely criminal purpose." In *United States v. Kis*, 658 F.2d 526, 540–42 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982), this court declared that a summons attacked on this ground would be quashed only if the taxpayer proved that the IRS had made a formal recommendation to prosecute to the Department of Justice or the IRS had abandoned a valid civil tax determination or collection purpose. In response to the volume of litigation over whether the IRS issued the summonses for an improper purpose, Congress amended section 7602 to provide that the "purposes for which [the IRS may issue a summons] include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602(b) (amended by Pub.L. 97–248, Title III, § 333(a), 96 Stat. 324, 622 (1982)). Unfortunately, the effective date of this amendment was September 3, 1982, several months after the summonses in this case were issued. The district court ruled

that the amendment did not apply retroactively to summonses issued before its effective date and this ruling is not before us on taxpayers' petition for fees. Thus, this may be one of the last cases governed by former section 7602.

As was to have been expected under the unamended section 7602, taxpayers challenged the enforcement action on the ground that the IRS had made an institutional commitment to prosecute taxpayers. To support this contention, taxpayers made several factual allegations: Special Agent Swire advised Wenz of his fifth amendment rights before beginning an interview; the IRS conducted a mail cover surveillance of taxpayers; taxpayers' telephone lines, according to Wenz's affidavit, were tapped; an IRS press release described these taxpayers as under criminal investigation; and the IRS was delaying its civil investigation in favor of its criminal investigation. We have examined the extensive pleadings and transcripts compiled in this case, including the transcripts of the three ex parte meetings, and have failed to find evidence that the IRS had formally recommended that the Department of Justice prosecute taxpayers or that the IRS had abandoned a proper civil purpose for the summonses when it issued the summonses. Indeed, the affidavits and testimony of IRS agents establish that the IRS was conducting a joint investigation of taxpayers' civil and criminal tax liability.

Moreover, taxpayers' submissions are insufficient to prove that the IRS had abandoned a proper civil purpose as of the date of issuance of the summonses. That Swire read Wenz his rights reflects nothing more than IRS policy. This fact is not probative of a sole criminal purpose. *See United States v. Moll,* 602 F.2d 134, 139 n. 7 (7th Cir.1979). Similarly, the use of a mail cover, in which the government records the senders and return addresses on taxpayers' mail without opening the correspondence, does not prove that the IRS had abandoned a civil purpose for the summonses when it issued the summonses. *See United States v. Will,* 671 F.2d 963, 965–67 (6th Cir.1982) (enforcing summons despite use of mail

cover). As for the alleged wiretap, the only evidence of its existence is Wenz's affidavit and testimony, which the district court found to lack credibility. Even if we assume that taxpayers' telephone lines were tapped, taxpayers merely speculated that the IRS had ordered the wiretaps, whereas IRS agents investigating taxpayers testified that they had no knowledge of any wiretap. The IRS freely admitted that it was investigating taxpayers' criminal tax liability; the IRS press release, which simply stated that the IRS had a number of tax shelter promoters under criminal investigation, does not negate a civil purpose for the summonses in this case. The fact that the IRS has targeted subjects for criminal investigation does not disprove a concurrent civil purpose. *See United States v. Cortese,* 614 F.2d 914, 920–21 (3d Cir.1980). Finally, taxpayers' success in frustrating enforcement of the summonses amply explains any delay in the civil investigation. Although the IRS issued the summonses over three years ago, it has been unable to examine the records of taxpayers' accounts.

 We also have considered whether the two requests for a grand jury investigation made by Special Agent Swire in August 1981 and June 1983 constituted a formal recommendation of prosecution by the IRS to the Department of Justice or proved that the IRS had abandoned a civil purpose for the summonses. We have concluded that the two grand jury requests are insufficient to quash the summonses for two separate reasons. First, as *United States v. LaSalle National Bank,* 437 U.S. 298, 317–20, 98 S.Ct. 2357, 2367–69, 57 L.Ed.2d 221 (1978), makes clear, the IRS *as an institution* must make the recommendation of prosecution or abandon the civil purposes before it issues the summonses; a request of an agent alone is not enough. Although Special Agent Swire requested a grand jury investigation in August 1981, the IRS as an institution decided on October 15, 1981 not to transmit the first request to the Department of Justice. Second, even assuming that a request for a

grand jury investigation constitutes a formal recommendation of prosecution, the IRS issued the summonses before it made any request to the Department of Justice for a grand jury investigation. The summonses were issued in February and March 1982; the second request for a grand jury investigation was made by Swire in June 1983. The validity of the summonses is determined as of their date of issuance. *See Garpeg, Ltd. v. United States*, 583 F.Supp. 799, 801–03 (S.D.N.Y.1984) (validity of summons is tested as of date of issuance; subsequent recommendation of prosecution does not invalidate summons) (citing cases); *United States v. Bank of California*, 424 F.Supp. 220, 223 n. 6 (N.D. Cal.1976) (summons enforceable even after indictment). Because there was no formal recommendation in effect when the summonses were issued and no evidence that the IRS had delayed in bad faith making a formal recommendation, the IRS was entitled to enforcement of the civil tax summonses. Thus, the IRS was entitled to enforce the summonses regardless of the requests for a grand jury investigation.

■ We find unpersuasive taxpayers' arguments that other government positions were unreasonable. Although unsuccessful, the government's opposition to taxpayers' intervention on the ground of timeliness was reasonable in light of our declaration in *United States v. Kis*, 658 F.2d at 535, that "we cannot stress too emphatically that these proceedings are intended to be summary in nature." For the same reasons that led us to conclude that taxpayers' factual allegations were insufficient to disprove a civil purpose for the summonses, we believe that the government's opposition to a *Kis* hearing on the ground that taxpayers had not established a sufficient inference of an improper motive was reasonable. The government's opposition to

additional discovery finds a reasonable basis in our instruction in *Kis* that such discovery should be strictly limited. *Id.* at 542 n. 52, 544. Because the district court ordered unusually extensive discovery in this case, we disagree with taxpayers' contention that the government unnecessarily prolonged the proceedings by pursuing enforcement of the summonses after it reasonably should have known that the district court would order discovery with which it would refuse to comply. The government was not obligated to voluntarily dismiss the enforcement action at pain of paying taxpayers' attorneys' fees at the earliest indication that the district court favored disclosure of the grand jury requests. Indeed, the IRS's refusal to reveal the requests was a reasonable step to protect the confidentiality of its investigation. As the Ninth Circuit stated in a substantially similar case, "[s]o long as initiation of the action was not vexatious, dismissal of an action cannot become vexatious absent a showing of bad faith." *United States v. Ford*, 737 F.2d 1506, 1510 (9th Cir.1984) (denying fees in summons enforcement action dismissed by the government). We conclude that because the initiation of the enforcement action was reasonable and the government was acting in good faith, the government's position was substantially justified. We, therefore, affirm the denial of taxpayers' petition for fees under the Equal Access to Justice Act.

B

■ Taxpayers also petitioned for attorneys' fees under Federal Rule of Civil Procedure 37.[4] Rule 37 provides that a party that unsuccessfully opposes discovery or that fails to comply with a discovery order shall pay the reasonable expenses, including attorneys' fees, incurred by the moving party, "unless the court finds that the op-

---

**4.** Federal Rule of Civil Procedure 37(f) formerly provided that "[e]xpenses and attorney's fees are not to be imposed upon the United States under this rule;" however, the Equal Access to Justice Act, 94 Stat. 2325, 2330 (1980), repealed this language. The legislative history underlying the Equal Access to Justice Act demonstrates that Congress intended to authorize the award of attorneys' fees and expenses against the United States under Rule 37. *See* H.R.Rep. No. 1434, 96th Cong., 2d Sess. 25 (1980) (Conference Report), U.S.Code Cong. & Admin.News 1980, 4953, 5014.

position to the motion [or the failure to comply with the order] was substantially justified or that other circumstances make an award of expenses unjust." Fed.R. Civ.P. 37(a)(4), (d). Taxpayers recognize that "the parallel language in the [Equal Access to Justice Act] and in Rule 37 indicates that the term 'substantially justified' should be interpreted consistently in both provisions." Appellants' Brief at 46. *See, e.g., Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 n. 7 (D.D.C.1982). For the reasons that we expressed with reference to the Equal Access to Justice Act, we conclude that the government's position was substantially justified for the purpose of Rule 37. Hence, we affirm the denial of taxpayers' petition for fees under Rule 37.

### C

■ Taxpayers also submitted a bill of costs based on the Equal Access to Justice Act, 28 U.S.C. § 2412(a). Section 2412(a) provides in pertinent part that "a judgment for costs ... *may* be awarded to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(a) (emphasis added). The use of "may" in section 2412(a) stands in contrast to the use of "shall" in section 2412(d)(1)(A), which provides that "a court *shall* award to a prevailing party ... fees ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A) (emphasis added). Whereas this mandatory language might be read to remove a district court's discretion over an

award of fees, the permissive language of section 2412(a) certainly preserves a court's discretion over an award of costs. *See, e.g., United States v. First National Bank of Circle,* 732 F.2d 1444, 1450 n. 2 (9th Cir.1984) (Norris, J., concurring). Thus, the award of costs rests with the discretion of the district court. *See Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 229 (D.Md.1981).

The district court denied taxpayers' bill of costs for two reasons. First, it concluded that taxpayers were not entitled to recover costs because they were not prevailing parties. We express no opinion as to this conclusion. Second, the district court independently exercised its discretion to deny costs. Because we agree with the district court that the position of the United States was substantially justified, we hold that the district court did not abuse its discretion in denying the bill of costs.

### III

The district court's denial of taxpayers' petition for fees and bill of costs is therefore

AFFIRMED.[5]

SWYGERT, Senior Circuit Judge, concurring.

In my view, this circuit's decision in *Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir. 1983), in which the court held that to be "substantially justified" the Government's position need only be reasonable is incorrect and should be overruled. As the majority notes, *see* ante note 5, the legislative history regarding the meaning of this term

---

5. Citing S.Rep. No. 253, 96th Cong., 1st Sess. 1, 8 (1979), the concurrence suggests that Congress expressly rejected a reasonableness test to determine whether the government's position is substantially justified. The Senate Report simply recites that the Senate Judiciary Committee rejected by a vote of 7 to 6 a motion to substitute "reasonably justified" for "substantially justified" in the text of what is now 28 U.S.C. § 2412(d)(1)(A). We note, however, that the House and the Senate met in conference after the House bill omitted any provision comparable to the Equal Access to Justice Act provisions

contained in the Senate bill. We accord the joint Conference Report of the House and the Senate greater weight than the Senate Report in ascertaining congressional intent because the Conference Report expresses the agreement of both houses of Congress. The Conference Report states that "[t]he test of whether the Government position is substantially justified is essentially one of reasonableness in law and fact." H.Rep. No. 1434, 96th Cong., 2d Sess. 22 (1980), U.S.Code Cong. & Admin.News 1980, 5011.

1280

is not free from doubt. *Compare* S.Rep. No. 253, 96th Cong., 1st Sess. 1, 8 (1979) (rejecting reasonableness language as too weak) *with* H.Rep. No. 1434, 96th Cong.2d Sess. 22 (1980), U.S.Code Cong. & Admin. News 1980, 5011 ("whether the Government position is substantially justified is essentially one of reasonableness in law and fact"). But "substantially justified" clearly means something more than "reasonable."

In my view, this circuit should adopt the test set forth by the United States Court of Appeals for the District of Columbia for determining whether the Government's position was "substantially justified." *See Spencer v. NLRB,* 712 F.2d 539, 559–61 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). I nonetheless concur because even under the *Spencer* test the Government's position was substantially justified.