Asst. U.S. Atty. Thomas P. Walsh, Chicago, Ill., for defendant.

**Chiquita GAVIN, et al., Plaintiffs,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

No. 84 C 87.

United States District Court, N.D. Illinois, E.D.

May 15, 1986.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs originally brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the decision of the Secretary of Health and Human Services (Secretary) denying plaintiffs' request that the Secretary waive recovery of overpayments of social security benefits under 42 U.S.C. § 404(b). The cause was referred to Magistrate James T. Balog, who found that there was not substantial evidence to support the Secretary's refusal to waive recovery. This court accepted Magistrate Balog's report and recommendation and granted plaintiffs

summary judgment. *Gavin v. Heckler*, 620 F.Supp. 999 (N.D.Ill.1985). Presently before the court is plaintiffs' motion for an award of attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1985). To grant the motion, this court must find that the Secretary's position was not "substantially justified." *Id.*

## BACKGROUND

Plaintiff Anna Gavin is the mother of four children, including plaintiffs Chiquita and Oliver Gavin. Chiquita and Oliver receive social security benefits based upon the earnings record of their deceased father, Walter Crite, Jr. Crite had a son by a previous marriage, also named Walter Crite, who likewise received such benefits. Walter Crite does not live with the plaintiffs, nor does he contact them.

On January 31, 1980, the Social Security Office informed Walter Crite that he was liable for overpayments of social security benefits amounting to $1,473.50. That office subsequently informed Chiquita and Oliver Gavin that they were contingently liable for the overpayment of benefits to Crite and that certain amounts would be withheld from their benefits to repay the Social Security Administration.

The Secretary's authority to recoup overpayments of benefits is contained in 42 U.S.C. § 404:

(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled ... or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income

which were the basis of the payments to such overpaid person....

■ Plaintiffs contested the determination that they were contingently liable for the overpayment to Crite. They alternatively contended that even if they were so liable the Secretary should have waived recoupment pursuant to 42 U.S.C. § 404(b). That provision requires that

there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

Section 404(b) is mandatory; it provides that the Secretary *shall* waive recoupment if a claimant meets the provision's requirements. *See Califano v. Yamasaki*, 442 U.S. 682, 693–94 n. 9, 99 S.Ct. 2545, 2554 n. 9, 61 L.Ed.2d 176 (1979) ("where provision for recovery and provision for waiver are phrased in equally mandatory terms, it is reasonable to infer that ... Congress did not intend to exalt recovery over waiver").

In 20 C.F.R. § 404.508, the Secretary clarifies the "defeat the purpose" exception to the government's right to recoupment:

(a) *General.* "Defeat the purposes of title II," for this subpart, means defeat the purpose of benefits under this title, *i.e.,* to deprive a person of income required for ordinary and necessary living expenses....

(b) *When adjustment or recovery will defeat the purpose of title II.* Adjustment or recovery will defeat the purpose of title II in (but not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses.

The Administration agreed with the Gavins that they were not at fault. Indeed, they had not themselves received any of the overpayments. Nevertheless, as co-beneficiaries, Chiquita and Oliver were contingently liable, the Administration maintained, and it refused to waive recovery. It

determined that it would withhold $96 per month from Chiquita and Oliver until it had recouped the entire $1,473.50 overpaid to Walter. Plaintiffs were denied reconsideration and eventually received a hearing *de novo* before an administrative law judge ("ALJ"). The ALJ found that under the applicable regulations Chiquita and Oliver were contingently liable for the overpayment to Crite. That finding was not challenged. He also ruled that waiver of recovery was not required under § 404(b), which the Gavins appealed. The Appeals Council approved the ALJ's decision, thereby rendering it the Secretary's final decision.

Plaintiffs then brought the present action, contending that the ALJ had improperly calculated plaintiffs' expenses in finding that recoupment would not defeat the purpose of Title II under § 404(b). The ALJ determined that the proper method of calculating plaintiffs' expenses was to divide common expenses evenly among the members of the Gavin household. For example, the Gavin family's rental expense was $400 per month. The ALJ determined that Chiquita and Oliver's combined rental expense was $160 per month, representing their one-fifth shares of the $400 per month rent. Applying this per capita method, the ALJ found that Chiquita and Oliver's combined monthly expenses were $774 and well below their monthly income. He therefore concluded that recoupment would not defeat the purpose of Title II.

Plaintiffs argued that expenses should be prorated according to the percentage of total family income contributed by each family member. Mrs. Gavin was unemployed. The family income was $1,342.40 per month, of which Chiquita and Oliver provided $1,042.40 through their social security and other benefits. Because Chiquita and Oliver contributed approximately 75 per cent of the family's income, they estimated their rental expense to be 75 per cent of $400, or $292 per month. So calculated, Chiquita and Oliver needed all their income to meet their share of expenses.

Magistrate Balog found that there was not substantial evidence to support the ALJ's per capita method of calculation, and reversed the decision that waiver was not required under § 404(b). He concluded that the ALJ should have examined the plaintiffs' entire financial position and that "[i]t surely cannot be the intent of the regulations to have the decision of repayment on the individual family member's income alone." *Gavin*, 620 F.Supp. at 1001. This court accepted Magistrate Balog's recommendation that recoupment would defeat the purpose of Title II and that the Secretary should have waived recoupment pursuant to 42 U.S.C. § 404(b). Accordingly, this court entered summary judgment for the plaintiffs.

### DISCUSSION

The so-called "American rule" has traditionally governed the payment of attorney fees in the United States. That doctrine generally requires parties to bear their own costs of legal representation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).[1] In 1980, Congress enacted the Equal Access to Justice Act, 28 U.S.C. § 2412, as an experimental alternative to the traditional American rule. The most expansive change occasioned by the EAJA is contained in § 2412(d)(1)(A), which provides that courts "shall" award attor-

---

1. The American rule seems to be grounded in the belief that parties should *not* be penalized for exercising their right to prosecute or defend a lawsuit. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4988. The rule has only two narrow common law exceptions: (1) courts may award attorney fees against a losing party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons; and (2) when an individual litigant, by successfully maintaining a suit, has conferred a benefit on a group of persons, the court may allow him to recover his attorneys' fees from the beneficiaries. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4987. The federal government has generally been immune to these two exceptions to the rule, and in the absence of express statutory authority courts cannot award attorney fees against the United States. *Alyeska*, 421 U.S. at 269, 95 S.Ct. at 1627.

ney fees to eligible parties who prevail in litigation with the United States unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Congress enacted § 2412(d)(1)(A) as an avowedly experimental provision which was to expire after a three-year period.[2]

The EAJA's legislative history indicates that Congress was gravely concerned that the American rule deterred individuals and businesses of limited resources from pursuing litigation against the United States:

> The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. ... For many citizens, the cost of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... In these cases, it is more practical to endure an injustice than to contest it.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5, 6, 9, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4988.

Congress, it appears, was particularly concerned about decisions of administrative agencies, fearing unbridled administrative discretion over individuals who lacked the means to seek judicial review of administrative actions.[3] In this respect the House Judiciary Committee noted that "[b]y allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, [the

EAJA] helps assure that administrative decisions reflect informed deliberation." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 12, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4991. The substantially justified standard and the burden of proof which it places on the government are "intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4993. *See also Bohn v. Heckler,* 613 F.Supp. 232, 237 (N.D.Ill.1985). Moreover, "where a party has had to engage in lengthy administrative proceedings before final vindication of his or her rights in the courts, the government should have to make a strong showing to demonstrate that its action was reasonable." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4997.

The legislation, however, did not make clear where and how this "substantially justified" standard fit, as a practical matter, with the standard of review for administrative proceedings. For example, by the terms of the statute providing for judicial review of Social Security decisions, the Secretary's findings of fact can be overturned only if they are not supported by substantial evidence. 42 U.S.C. § 405(g). Did Congress consider the defense of a finding later held "not supported by substantial evidence" the equivalent of taking a position which was not "substantially justified"? A review of the legislative history does not resolve the question. The House

---

2. Congress has since permanently adopted § 2412(d)(1)(A) *(see discussion infra )*. Act of August 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (1985). The full text of the provision reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for review of agency action brought by or against the United States in any court having jurisdiction of the action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

In addition, the EAJA gave courts the discretion to award fees against the United States under the common law exceptions to the American rule. 28 U.S.C. § 2412(b). Unlike § 2412(d)(1)(A), § 2412(b) did not contain a "sunset provision" and therefore marked a permanent change in the law.

3. The EAJA also provided for the awarding of attorney fees against the United States in agency adjudications. 5 U.S.C. § 504. The standard for such awards is identical to the "substantially justified" standard contained in 28 U.S.C. § 2412(d)(1)(A).

Judiciary Committee Report accompanying the original legislation indicated that the standard "is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis in both law and fact, no award will be made." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4989. One must read this language, however, in light of the Senate Judiciary Committee's rejection of a less demanding "reasonably justified" standard. S.Rep. No. 253, 96th Cong., 1st Sess. 1, 8 (1979).

Given these mixed expressions of congressional intent, courts have developed two interpretations of the "substantially justified" standard. Several circuits have read the standard as requiring only that the government's position be reasonable to avoid liability for attorney fees. For instance, the Eighth Circuit in *Iowa Express Distribution, Inc. v. N.L.R.B.*, 739 F.2d 1305, 1308 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984), construed the standard as requiring the government to show that "there is a reasonable basis in truth for the facts alleged in the pleadings; that there exists a reasonable basis in the law for the theory it propounds; and that the facts alleged will reasonably support the legal theory advanced." *See also Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985); *accord: Anderson v. Heckler,* 756 F.2d 1011, 1013 (4th Cir.1985) (government can defeat a claim for fees if it can show that its position had a reasonable basis in law and fact); *Temp Tech Industries, Inc. v. N.L.R.B.,* 756 F.2d 586, 590 n. 4 (7th Cir.1985) (government's position is substantially justified if it had a "reasonable basis in law and fact") (*quoting Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir.1983)); *Foster v. Tourtellotte,* 704 F.2d 1109, 1112 (9th Cir.1983) ("reasonableness is the correct test for determining whether the government's position was substantially justified").

Other courts have afforded greater weight to the Senate Committee's rejection of a "reasonably justified" standard, concluding that the standard under § 2412(d)(1)(A) requires the government to show that its position was something more than merely reasonable. In *Spencer v. N.L.R.B.,* 712 F.2d 539, 558 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), the District of Columbia Court of Appeals found that the Senate Committee's refusal to adopt a "reasonably justified" standard required the test to be "slightly more stringent than one of reasonableness." *See also United States v. Kemper Money Market Fund, Inc.,* 781 F.2d 1268, 1280 (7th Cir.1986) (Swygert, J., concurring) (substantially justified means something more than reasonable); *Ulrich v. Schweiker,* 548 F.Supp. 63, 65 (D.Idaho 1982) (applicable standard is slightly above one based on reasonableness); *Wolverton v. Schweiker,* 533 F.Supp. 420, 424 (D.Idaho 1982).

In 1985, Congress reaffirmed its desire to provide litigants of limited means access to the courts by permanently reenacting the attorney fees provision contained in § 2412(d)(1)(A). Act of August 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (1985). At the same time, Congress also apparently resolved the dispute as to the proper construction of the substantially justified standard. The only legislative history to the 1985 amendments, the House Judiciary Committee Report, clarifies that " 'substantial justification' means more than merely reasonable. Because in 1980 Congress rejected a standard of 'reasonably justified' in favor of 'substantially justified,' the test must be more than mere reasonableness." H.R.Rep. No. 120, 99th Cong., 1st Sess. 9, *reprinted in* 1985 U.S.Code Cong. & Ad. News 132, 138. The House Committee, echoing Congress' initial desire to encourage informed deliberation in administrative decisions, further explained that "[a]gency action found to be arbitrary and capricious *or unsupported by substantial evidence* is virtually certain not to have been substantially justified under the Act. Only the most extraordinary circumstances could permit such an action to be found to be substantially justified under the Act." H.R.Rep. No. 120, 99th Cong., 1st Sess. 9,

10, *reprinted in* 1985 U.S.Code Cong. & Ad.News 138 (emphasis added).

If this legislative history reflects Congress' intent, then defense of a finding which is ruled "not supported by substantial evidence" is indeed a position which is not "substantially justified," unless "extraordinary circumstances" are present. Such a construction of the statute would certainly simplify many decisions about attorney fee awards under the EAJA. Where the case turned on findings of fact and the plaintiff succeeded in his appeal, the plaintiff would also nearly always win an award of attorney fees. In the instant case, for example, this court has already found that the Secretary's determination that Chiquita and Oliver did not need their benefits to meet their expenses was not supported by substantial evidence. We note no extraordinary circumstances. Therefore, under the above construction of the statute, plaintiffs are entitled to an award of attorney's fees under the Act.

This court recognizes, however, that the Seventh Circuit's most recent discussion of the standard for EAJA awards, in *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1276 (7th Cir.1986), followed its prior precedent and construed the EAJA's "substantially justified" standard as requiring only that the government's position be reasonable to avoid an award of fees. Apparently that portion of the Act's most recent legislative history pertaining to Congress' interpretation of the standard was not brought to the court's attention since only the 1979–80 legislative history was discussed. *Id.* at 1279 n. 5.[4] However, it is also possible that the court concluded that the House Committee Report did not necessarily reflect the intent of the entire Congress. There could be sound policy reasons for not construing the EAJA as a statute providing virtually automatic attorney fees awards for prevailing plaintiffs.

Our decision in this case, however, need not rest on the more stringent standard of the House Committee Report, nor the "slightly above reasonableness" test of *Spencer*. Even under a standard of mere reasonableness, the government has failed to meet its burden of proving that its position in this case was substantially justified. The Secretary based his refusal to waive recoupment on a per capita method of calculating plaintiffs' expenses. He did not examine the Gavin family's income and expenses as a whole. There is not a reasonable basis in law to support the Secretary's method of calculation in this regard. For example, in *Hansen v. Harris*, 507 F.Supp. 900 (W.D.Ark.1981), a case factually similar to the instant case, the court found that the Secretary should not have recouped overpayments by withholding benefits from plaintiff's daughter where plaintiff and her daughter had a total income of $446 per month and expenses of $395.69. The *Hansen* court did not use a per capita method to calculate plaintiff's daughter's expenses, as the Secretary did in this case. Rather, it examined household expenses and income as a whole in determining that withholding benefits from Mrs. Hansen's daughter would defeat the purpose of Title II. *See also Milton v. Harris*, 616 F.2d 968, 974 (7th Cir.1980), and cases cited there (person's entire financial position should be considered).

In addition, there is no reasonable factual basis to support the Secretary's per capita allocation of expenses, which resulted in attributing only two-fifths of the Gavin household's common expenses to Chiquita and Oliver. The Secretary's method of calculation ignores the unfortunate reality that Chiquita and Oliver paid for not only their own expenses, but also for a majority of the total expenses incurred by the Gavin household. Oliver and Chiquita's various benefits accounted for nearly 75 per cent of

---

**4.** The court would further note, however, that Judge Swygert, who argued that the standard requires more than mere reasonableness, concurred in the judgment. *Kemper*, 781 F.2d at 1280 (Swygert, J., concurring). Consequently, it appears that the government's position in *Kemper* was substantially justified under the more stringent standard envisioned by Congress, so the case may not have squarely presented the question.

the Gavin household's entire income. It is unreasonable to conclude, as the Secretary did, that together they paid for only two-fifths of the household's common expenses. As Magistrate Balog noted in rejecting the Secretary's method of calculation, "[t]he Gavin family cannot be split in fifths". *Gavin,* 620 F.Supp. at 1001. Rather, under a realistic approach to Chiquita and Oliver's position within the Gavin household, it is clear that they needed substantially all of their income to meet current and ordinary living expenses. Under the Secretary's own regulations, he should have waived recoupment from the plaintiffs. His decision not to do so lacks any reasonable basis in fact.

This court concludes that under any construction of the "substantial justification" standard, whether it is read to mean "reasonableness," "slightly above reasonableness," or the equivalent of "supported by substantial evidence," the government has not met its burden of showing that its position before this court was substantially justified. Accordingly, plaintiffs are entitled to an award of attorney fees under the Equal Access to Justice Act.

Plaintiffs' attorneys, Mr. Bouman and Ms. Kahn, have submitted documentation indicating that they devoted 7.3 and 58.2 hours respectively to plaintiffs' claim before this court. Mr. Bouman requests the court to calculate his fees at a rate of $75 per hour, the statutory maximum under the EAJA absent special circumstances. Mr. Bouman's extensive litigation background in Social Security matters merits such a rate of compensation and the court accordingly awards plaintiff $547.50 for Mr. Bouman's services.

Ms. Kahn has requested the court to calculate her fees at a rate of $65 per hour. It is the opinion of this court that this rate is too high. During the majority of this litigation Ms. Kahn was a graduate of law school but had not been admitted to the bar. Therefore, this court concludes that a rate of $50 per hour reasonably reflects Ms. Kahn's legal education, while accounting for the fact that she was not a member of the practicing bar during most of the time she devoted to plaintiffs' case. Accordingly, plaintiffs are entitled to fees for Ms. Kahn's services in the amount of $2,910, which, together with the award for Mr. Bouman's services, makes a total fee award of $3,457.50.

**CONCLUSION**

The Secretary has failed to meet his burden of showing that he was substantially justified in refusing to waive recoupment of the overpayment of benefits for which plaintiffs were contingently liable. Accordingly, pursuant to 28 U.S.C. § 2412(d)(1)(A), plaintiffs are entitled to a fee award in the amount of $3,457.50.